**GANNETT ROCHESTER NEWSPAPERS, A DIVISION OF GANNETT CO., INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent;**

**Newspaper Guild of Rochester, Local 17, Intervenor.**

**No. 92–1004.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 28, 1993.

Decided March 26, 1993.

William A. Behan, with whom John B. Jaske, Arlington, VA, was on the brief, for petitioner.

Angela Washington, Attorney, N.L.R.B., with whom Jerry M. Hunter, General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Collis S. Stocking, Supervisory Atty., Washington, DC, were on the brief, for respondent.

James B. Coppess, with whom David S. Barr, Washington, DC, and Marsha S. Berzon, San Francisco, CA, were on the brief, for intervenor Newspaper Guild of Rochester, Local 17.

Mona C. Zeiberg, Washington, DC, was on the brief for amicus curiae the Chamber of Commerce of the United States of America. Robin S. Conrad, Washington, DC, also entered an appearance.

Before BUCKLEY, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Gannett Rochester Newspapers ("the Company") seeks review of an order of the National Labor Relations Board ("NLRB" or "the Board"). Before the Board, the Company claimed that by agreeing to a collective bargaining agreement requiring the Company to provide certain types of information, but not others, the Newspaper Guild of Rochester, Local 17 ("the Guild"), waived its right to receive information not provided for in the agreement. The NLRB disagreed and ruled that the Company's refusal to produce the information the Guild had requested in order to perform its collective bargaining functions constituted an unfair labor practice, *Gannett Rochester Newspapers*, 305 N.L.R.B. No. 134, 139 L.R.R.M. (BNA) 1109 (1991), in an order erroneously holding that contract clauses carried forward from prior labor agreements without substantive change lose their validity unless actively renegotiated each time, *see id.*, 139 L.R.R.M. at 1110. Because we cannot determine the extent to which the Board's decision rests on this error of law, we vacate the Board order and remand for reconsideration.

## I.

The Company publishes two daily newspapers in Rochester, New York—*The Democrat and Chronicle*, a morning paper, and *The Times–Union*, an evening paper. The Guild represents employees in the Company's news and editorial departments pursuant to a collective bargaining agreement. The Company and the Guild have been parties to four two-year collective bargaining agreements since 1978, with several years intervals between agreements during times when the parties apparently experienced difficulty reaching agreement. The latest agreement, which had been in effect since September 25, 1989, expired on September 24, 1992, and the parties are currently negotiating a successor agreement.

Each of the four collective bargaining agreements between the Company and the Guild have included, in substantially the same language, the two provisions at issue in this case. The first is the "information clause," which obligates the Company to provide specified types of information to the Guild upon request. In its present form, the information clause provides, insofar as relevant here:

1. The Publisher shall supply the President of the Guild, upon written request, with a list containing the following information for all regular full-time Guild bargaining unit employees on the payroll. Such requests shall be made at reasonable intervals no more often than semiannually.

   1. Name
   2. Address
   3. Experience rating
   4. Anniversary date
   5. Date of hire
   6. Salary

2. The above information will be provided for the confidential use of the Guild officers.

   .     .     .     .     .

4. Information on new hires and individuals returning to the bargaining unit from exempt positions will be provided quarterly. When such information can be generated by the personnel/payroll system, such information will be provided within 30 days.

*Collective Bargaining Agreement*, at 3 (hereinafter, "*CBA*").

The second provision at issue is the "zipper clause," which restricts the scope of the parties' agreement to the four corners of the contract and bars collective bargaining during the term of the agreement. Found in Article XXV, section 4, the zipper clause provides as follows:

The contract entered into on September 25, 1989 between the Newspaper Guild of Rochester and the Rochester Democrat and Chronicle and Rochester Times–Union constitutes the sole and entire agreement between the parties, and supersedes all prior agreements, commitments, and practices, whether oral or written between the Company and the Union, or the Company and any covered employee or employees. No matter or matters shall be the subject of collective

bargaining negotiations during the term of this agreement, even though such matters may not have been negotiated upon previously nor within the knowledge or contemplation of either or both of the parties hereto at the time of negotiations for this contract.

*CBA*, at 15–16. Both the information and zipper clauses have been the subject of continued negotiations and, at times, controversy between the Company and the Guild.

## A. *Bargaining History*

### 1. The Information Clause

The Guild proposed adding what is now section 1 of the information clause in 1970. In response, the Company made a counterproposal that included certain safeguards, such as a requirement that the Guild keep confidential any information provided. However, the Guild dropped its proposal in the spring of 1971, in exchange for concessions by the Company on holiday benefits and exemptions from the bargaining unit. The information clause was not again negotiated until 1975.

On March 25 of that year, the Company proposed to add an information clause that was broader in scope than the clause's present language. The Guild countered, on October 22, 1975, with a counterproposal making technical revisions to the Company's proposal. Under the 1975 proposals, the Company would have been obligated to provide, in addition to the information set forth in section 1 of the information clause, the following information on a monthly basis:

a. All merit increases granted by name of employe [sic], individual amount, resulting new salary, and effective date.

b. Step-up increases paid by name of employe [sic], individual amount, resulting new salary, and effective date.

c. Changes in classification, any salary changes by reason thereof and effective date.

d. Resignations, retirements, deaths and any other revisions in the data listed in Section 1 and effective dates.

Joint Appendix at 533. The contract, as finally signed on November 17, 1978, did not include the above language; the information clause did, however, contain present section 1 and the confidentiality requirement the Company had proposed in the 1970 negotiations.

In 1980, the Guild proposed that the information clause be broadened to include the additional information disclosure requirements discussed in the 1975 negotiations but deleted from the 1978 agreement. Later that year, the Company asked, *inter alia*, that section 1 of the information clause be restricted in scope to four items—name, experience rating, anniversary date, and salary change (if any)—for current employees. The agreement in operation from November 17, 1981 to November 16, 1983 adopted the Company's proposed revisions to the information clause, but not the Guild's.

The next agreement, which was in effect from December 19, 1984 through November 16, 1986, incorporated the Guild's 1983 proposal to amend section 1 to require the Company to provide the date of hire for current employees. Finally, in the negotiations preceding the most recent agreement, the Guild proposed to include a requirement that the Company provide the specified information on new employees or transferees into the Guild's bargaining unit within thirty days of their addition to the bargaining unit. That proposal was adopted in the most recent collective bargaining agreement and resulted in the present information clause.

### 2. The Zipper Clause

The zipper clause has a much simpler, but less harmonious, history. On March 25, 1975, the Company proposed to add the present language of the zipper clause. The Guild strongly objected to the zipper clause, arguing that "[t]his zipper clause is about as all inclusive as any thinking man could have made. What you are asking us to [do] is forfeit our rights under the law. That's very, very important to us." Transcript of Bargaining Negotiations 5 (Jan. 7, 1976). Apparently, it was very important

to the Company as well, for the agreement subsequently signed on December 4, 1979 included the zipper clause. Each of the three agreements that followed also included the zipper clause. Although no changes were made to the language of the zipper clause, its effective date was changed in each contract to reflect the new effective date of the agreement as a whole.

The zipper clause was last discussed in 1988, when the parties made competing proposals addressing a potential merger between the Company's two newspapers. The Company's proposed addition contained a zipper clause specific to the language dealing with the potential merger. The Guild questioned the need for the self-contained zipper clause, in view of the agreement's overall zipper clause. Agreeing with the Guild, the Company withdrew the mini-zipper clause from its proposal.

## B. *The Present Controversy*

During each of the four most recent contracts, the Guild made semiannual requests for the information set forth in the information clause, *plus* information on grade, evaluation rating, previous salary, work history raises, merit raises and step raises for each employee in the bargaining unit. The undisputed purpose for which the Guild requested both categories of information was to monitor the Company's administration of the collective bargaining agreement's system of "merit raises" for above-average employees. Until 1990, the Company honored each Guild request, even though the information clause did not obligate the Company to provide information on grade, evaluation rating, previous salary, work history raises, merit raises and step raises.

However, in February 1990, the Company decided to provide only the information specified in the information clause, in response to the Guild's semiannual request for "salary information ... as provided for in our contract." Letter from Steve Orr,

President of the Guild, to Carol Pierce, Personnel Director of the Company, at 1 (Jan. 2, 1990) (hereinafter, *"First Request"*). Stated in the negative, the Company refused to provide information on grade, evaluation rating, previous salary, work history raises, merit raises and step raises. When the Guild objected that "we have received this information in response to all previous requests" and that "[t]he missing information is needed for the Guild to properly administer the contract," Letter from Steve Orr, President of the Guild, to Carol Pierce, Personnel Director of the Company, at 1 (Feb. 12, 1990) (hereinafter, *"Second Request"*), the Company responded that the zipper clause had relieved it of any obligation to follow its past practice of providing information not specified in the information clause.

Displeased with the Company's response, the Guild filed unfair labor practice charges against it in March 1990. An Administrative Law Judge ("ALJ") found that the Company's refusal to produce the withheld information constituted unfair labor practices under sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* (1988).[1] *Gannett Rochester Newspapers*, No. 3–CA–15531, slip op. (A.L.J. June 12, 1991). The ALJ ruled that the information clause provides only that the Company must produce the information specified therein and "does not provide that *only* that information shall be furnished." *Id.* at 4. As such, and because "there was no discussion and no change in the language of the clause" in the negotiations preceding the signing of the most recent collective bargaining agreement, *id.*, the information clause is not a "clear and unmistakable waiver by the Union to furnishing the additional information." *Id.* at 5. Nor is the zipper clause such a waiver, for precisely the reason that "[a] zipper clause which is carried over from a prior collective-bargaining agreement, where there has been no modification from the prior contract, can-

---

1. Respectively, sections 8(a)(1) and (5) of the NLRA make it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of" collective bargain-

ing rights, 29 U.S.C. § 158(a)(1) (1988), and "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5).

not be used to eliminate a past practice and thereby establish a clear and unmistakable waiver." *Id.* at 4.

The NLRB affirmed in a half-page Decision adopting the ALJ's findings of fact and conclusions of law. *Gannett Rochester Newspapers*, 305 N.L.R.B. No. 134, 139 L.R.R.M. (BNA) 1109 (1991). In so ruling, the NLRB held that "the Union did not clearly and unmistakably waive its right to request the disputed information" because here, unlike *TCI of New York, Inc.*, 301 N.L.R.B. No. 122, 136 L.R.R.M. (BNA) 1277 (1991), "[t]he language of the zipper clause and the relevant language of the information clause were not changed from that in the preceding contract to the current contract." 305 N.L.R.B. No. 134, 139 L.R.R.M. at 1110. The NLRB therefore ordered the Company to produce the withheld information and to post a remedial notice.

NLRB Member Clifford R. Oviatt, Jr., concurred in the result only. He argued that "to require the bargainers specifically to agree to what is or is not included in a particular contract provision that has been carried forward from old contracts ... creates a situation that could be more destructive of a positive collective-bargaining relationship than helpful to it." *Id.* (Oviatt, Member, concurring in result). He also argued that "to refuse to give effect to a zipper clause unless the parties have engaged in close analysis and extensive discussion of the scope of each clause carried forward in essentially the same form from previous contracts renders negotiation of the zipper clause a meaningless exercise." *Id.* Nevertheless, he felt constrained to concur in the result by the Supreme Court's holding, in *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983), that "we will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'"

The Company petitions this Court for review, with support from the United States Chamber of Commerce ("Chamber") as *amicus curiae*, and the NLRB has filed a cross-petition for enforcement of its decision. The Guild has intervened in support of the NLRB's ruling.

## II.

In the Company's view, this case is an easy one. The Company argues that the Guild requested the additional information relying on past practice, that the zipper clause waives its right to rely on past practice, and that therefore, the Company was entitled to deny the Union the information. The Company's argument relies on *TCI of New York, Inc.*, 301 N.L.R.B. No. 122, 136 L.R.R.M. (BNA) 1277 (1991), wherein the Board construed a zipper clause stating: "This agreement ... supersedes all prior agreements, understandings and past practices, oral or written, expressed or implied." The Board found this language to be a waiver by the Union of past practices. Relying on that zipper clause, the Board allowed the employer unilaterally to eliminate a ten-year past practice of paying year-end bonuses to bargaining unit employees without further bargaining. *See also Columbus & Southern Ohio Electric Co.*, 20 N.L.R.B. 686, *aff'd sub. nom. IBEW Local 1466 v. NLRB*, 795 F.2d 150 (D.C.Cir.1986) (holding that a zipper clause similar in language to *TCI* and to the zipper clause in the present case was a waiver of past practice allowing the employer to unilaterally discontinue a forty-year past practice of Christmas bonuses).

The Company emphasizes the similarity of the zipper clause in the present case to the *TCI* clause:

The contract entered into on September 25, 1989 between Newspaper Guild of Rochester and the Rochester Democrat and Chronicle and and Rochester Times–Union ... supersedes all prior agreements, commitments, and practices, whether oral or written[,] between the Company and the Union, or the Company and any covered employee or employees.

*CBA*, at 15. A difficulty with this line of argument, however, is that it ignores the Guild's statutory right to the information in question. Section 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5), secures the right to

discover from employers information necessary for the Union properly to perform its representative functions. "An employer's duty to bargain in good faith with a labor organization representing its employees has long been acknowledged to include a duty to supply a union with requested information that will enable the union to negotiate effectively and to perform properly its other duties as bargaining representative." *Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL–CIO v. NLRB,* 711 F.2d 348, 358 (D.C.Cir.1983) (brackets and internal quotation marks omitted); *see also NLRB v. ACME Indus. Co.,* 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967) (noting that the NLRA requires employers "to provide information that is needed by the bargaining representative for the proper performance of its duties"). A union's statutory discovery right "extends to data requested in order properly to administer and police a collective bargaining agreement as well as to requests advanced to facilitate the negotiation of such contracts." *Oil, Chem. & Atomic Workers,* 711 F.2d at 358.

At oral argument, the Company advised that had the Union requested the same information under the statute, the Company would have provided it. While we might question the *bona fides* of a party to a collective bargaining agreement who would insist through the circuit court of appeals on withholding information not because of the lack of any right of the other party to obtain that information, but because of the form of the request, that question is not before us. What is in the record, though, is that the Union's second request for the information not specified in the information clause was at least subject to the construction that it was made under the statute rather than the contract. *See Second Request,* at 1 (requesting the information because "[t]he missing information is needed for the Guild to properly administer the contract."). This may be what the

Board intended to rely upon in treating the question before it and now in arguing before us that the proper question is whether the Union waived a statutory right, not whether it waived past practices.

■ As the Board properly argues, ensuring that unions have access to such information advances Congress's goals of facilitating labor agreements through collective bargaining and enabling unions intelligently to represent their members. *Oil, Chem. & Atomic Workers,* 711 F.2d at 358–59. "[N]ational labor policy casts a wary eye on claims of waiver of statutorily protected rights." *NLRB v. New York Tele. Co.,* 930 F.2d 1009, 1011 (2d Cir.1991). Therefore, the statutory right to discovery can be waived only if the union's waiver is "clear and unmistakable." *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983); *see also Oil, Chem. & Atomic Workers,* 711 F.2d at 354 n. 8 (same).

■ Under the clear-and-unmistakable standard, courts may "not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'" *Metropolitan Edison Co.,* 460 U.S. at 708, 103 S.Ct. at 1477. Moreover, "[e]ven explicit [waiver] language 'will not be read expansively.'" *George Banta Co. v. NLRB,* 686 F.2d 10, 20 (D.C.Cir.1982) (quoting *Delaware Coca–Cola Bottling Co. v. General Teamster Local 326,* 624 F.2d 1182, 1188 (3d Cir.1980)), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983). As a consequence, "silence in the bargaining agreement is insufficient to constitute ... a [clear and unmistakable] waiver," *Oil, Chem. & Atomic Workers,* 711 F.2d at 354 n. 8, and, generally speaking, "waiver[s] of statutory rights must be demonstrated by an 'express statement in the contract to that effect.'"[2] *George Banta Co.,* 686 F.2d at 20 (quoting *Drake*

---

**2.** Nevertheless, clear and unmistakable waivers have been inferred from the structure of collective bargaining agreements, *see Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), and from bargaining history showing that the parties have "consciously explored" or "fully discussed" the matter on which the union has "consciously yielded" its rights. *See, e.g., C & C Plywood Corp.,* 148 N.L.R.B. 414 (1965), *enf. denied,* 351 F.2d 224 (9th Cir.1965), *rev'd,* 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967).

*Bakeries, Inc. v. Local 50, Bakery & Confectionery Workers*, 370 U.S. 254, 265, 82 S.Ct. 1346, 1352, 8 L.Ed.2d 474 (1962)).

It may be that the Board could have entered a valid order based on the theory that the *TCI* decision, concerning a waiver of past practice, is inapposite in this case involving the argued waiver of statutory rights. It may be that we would have affirmed such an order. The difficulty is that we cannot clearly tell that this is what the Board did. The Board's entire "decision and order," exclusive of footnote one, consisted of a twelve-line adoption of the recommended order of the ALJ. There is nothing wrong, in and of itself, in the Board adopting the ALJ's opinion. The great difficulty arises in the Board's footnote one. That footnote, thirty lines of denser type than the body of the opinion, recognizes the Company's reliance on *TCI of New York*. The Board then finds *TCI* distinguishable on the basis that

> [i]n *TCI* ... the language of the zipper clause had been negotiated and changed during bargaining for the most recent contract. Here, the Respondent had provided the information now in dispute in response to the Union's information requests under the prior contract. The language of the zipper clause and the relevant language of the information clause were not changed from that in the preceding contract to the current contract. Therefore, here, unlike the situation in *TCI*, no event put the Union on notice that the Respondent contemplated a change in the bargaining relationship in that respect.

305 N.L.R.B. No. 134, 139 L.R.R.M. (BNA) 1109, 1110 (1991).

Thus, it appears to us that the Board has adopted the theory of law that a contract clause in a collective bargaining agreement loses its effectiveness if it is carried forward from a previous agreement without renegotiation. Our belief that this is the principle advanced by the Board is informed by the separate statement of Board member, Oviatt, who concurred in the result but did so expressing his great reluctance for the reason that he feared that "to

require ... bargainers specifically to agree to what is or is not included in a particular contract provision that has been carried forward from old contracts ... creates a situation that could be more destructive of a positive collective bargaining relationship than helpful to it." *Id.* (Oviatt, Member, concurring in the result). As he further argued, "to refuse to give effect to a zipper clause unless the parties have engaged in close analysis and extensive discussion of each clause carried forward in essentially the same form from previous contracts renders negotiation of the zipper clause a meaningless exercise." *Id.* That the majority of the Board made no response to Member Oviatt's concurrence offers strong evidence that he correctly understood the import of its decision.

Therefore, it seems that the Board relied on a "reaffirmation" rule, that the zipper clause or possibly a collective bargaining agreement clause waiving rights will be ineffective unless it is reaffirmed upon every new agreement. Indeed, the ALJ's opinion adopted by the Board squarely states "a zipper clause which is carried over from a prior collective-bargaining agreement, where there has been no modification from the prior contract, cannot be used to eliminate a past practice and thereby establish a clear and unmistakable waiver." *Gannett Rochester Newspapers*, No. 3–CA–15531, slip op. at 4 (A.L.J. June 12, 1991). Though the Board's counsel before us disavows this "reaffirmation" rule, the Board's opinion is before us for review, not the *post hoc* rationalizations of counsel. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988). We cannot ascertain whether the adopting Board would have reached the same result without the application of the reaffirmation theory. Therefore, if the reaffirmation theory is erroneous, we must remand this case for further proceedings. It is, and we do.

First, a reaffirmation requirement is at odds with several cases in which courts have given effect to contract clauses that had been incorporated without renegotiation or change from old labor agreements into new ones. *See, e.g., International*

*Bhd. of Elec. Workers, Local 47 v. NLRB,* 927 F.2d 635 (D.C.Cir.1991) (affirming NLRB's ruling that a "wage reopener" clause was effective even though the clause had been carried forward from prior contracts without substantial change for forty years); *Indianapolis Power & Light Co. v. NLRB,* 898 F.2d 524 (7th Cir.1990) (giving effect to a no-strike clause that had been incorporated from contract to contract for eleven years without change or renegotiation); *International Bhd. of Elec. Workers, Local 803 v. NLRB,* 826 F.2d 1283 (3d Cir.1987) (upholding NLRB's ruling that a no-strike clause waived the union's right to conduct sympathy strikes, although the no-strike clause had been carried forward without change or discussion in three different contracts); *General Motors Corp. v. NLRB,* 700 F.2d 1083 (6th Cir.1983) (giving effect to an information clause that had been in effect, without change or negotiation, for more than forty years); *Retail Clerks Int'l Ass'n, Local 455 v. NLRB,* 510 F.2d 802 (D.C.Cir.1975) (reversing NLRB and upholding an "additional stores" clause, despite the fact that it had not been changed or negotiated for ten years).

Further, the NLRB's reaffirmation requirement ignores the mechanics of collective bargaining negotiations. A contract clause is incorporated into a new agreement without change or discussion *only* when the parties mutually agree to do so. Additionally, the parties explicitly reaffirm each provision of the contract when they assent to the contract as a whole, regardless of whether or not they discussed each provision. Because each collective bargaining agreement "is the product of substantive negotiations between intensely interested parties, usually advised by specialized counsel," *Martinsville Nylon Employees Council Corp. v. NLRB,* 969 F.2d 1263, 1267 (D.C.Cir.1992), there is no justification for a rule as paternalistic as the reaffirmation requirement. *Id.* (stating that there is no "need to fear that either party may have missed the fine print or somehow been taken advantage of").

We share the concern expressed by Member Oviatt in the passage from his separate opinion quoted above that the reaffirmation rule may contravene settled national labor policies. *See Gannett Rochester Newspapers,* 305 N.L.R.B. No. 134, 139 L.R.R.M. (BNA) 1109, 1110 (1991) (Oviatt, Member, concurring in result). When Congress enacted the NLRA, it "declared [it] to be the policy of the United States" to "encourag[e] the practice and procedure of collective bargaining." 29 U.S.C. § 151 (1988). "While Congress did not compel agreement between employers and bargaining representatives, it did require collective bargaining in the hope that agreements would result." *NLRB v. Truitt Mfg. Co.,* 351 U.S. 149, 152, 76 S.Ct. 753, 755, 100 L.Ed. 1027 (1956) (citing 29 U.S.C. § 174(a)(1) (1988)). Congress believed—and "[e]xperience has demonstrated"—that collective bargaining agreements "promote industrial peace and stability," *Carey v. Westinghouse Corp.,* 375 U.S. 261, 271, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964) (internal quotation marks omitted), by replacing the law of the jungle with the "common law of the shop." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

As we noted above, it may well be that the NLRB can enter a valid order accomplishing precisely what it intended if it finds that there was never a clear and unmistakable waiver of the statutory right. It may be that that is what the Board intended here. Unfortunately for the Board, we cannot affirm on speculation, or on the rationale of counsel, but only on the decision of the Board. *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (The reviewing court "must judge the propriety of [the agency's] action solely by the grounds invoked by the agency").

## III. CONCLUSION

For the reasons set forth above, we grant the petition for review to the extent that we vacate the decision of the NLRB, deny the NLRB's cross-petition for enforce-

ment, and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*