**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, NATIONAL BORDER PATROL COUNCIL, LOCAL 2366, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 96–1343.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 3, 1997.

Decided June 3, 1997.

---

Kevin M. Grile, Chicago, IL, argued the cause, for petitioner, with whom Mark D. Roth and Charles A. Hobbie, Washington, DC, were on the briefs.

William E. Persina, Attorney, Federal Labor Relations Authority, argued the cause for respondent, with whom David M. Smith, Solicitor, was on the brief. William R. Tobey, Deputy Solicitor, and James F. Blandford, Attorney, Washington, DC, entered appearances.

Before EDWARDS, Chief Judge, WALD and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

Opinion concurring in part and dissenting in part filed by Circuit Judge WALD.

Harry T. EDWARDS, Chief Judge:

In February 1991, the President of Local 2366 of the American Federation of Government Employees ("Local 2366") sought "midterm bargaining" with management of the U.S. Border Patrol of the Immigration and Naturalization Service ("INS") in Del Rio, Texas, over "the current policy of assigning Agents to the Brush Unit, War on Drugs Unit, and plainclothes Unit at the Del Rio, TX., station." At the time when this request was made, the American Federation of Government Employees National Border Patrol Council, AFL–CIO ("AFGE") was the certified bargaining agent for a nationwide unit of INS Border Patrol employees. The master agreement between AFGE and INS was adopted in 1976, but it had expired in late 1978 or early 1979. The exclusive bargaining agent for the unit employees during negotiations for a new master agreement was the National Border Patrol Council of AFGE, not the local unions of AFGE.

The request for bargaining by Local 2366 was rejected by management because, according to the INS, management retained the right to assign work as it saw fit under the parties' expired agreement. The request made by Local 2366 was never presented by AFGE as a part of negotiations for a new national agreement. The Federal Labor Relations Authority ("FLRA") found that INS's refusal to bargain with Local 2366 did not constitute a violation of the duty to bargain under the Federal Service Labor–Management Relations Statute ("the Statute"). See INS, U.S. Border Patrol, Del Rio, TX and National Border Patrol Council, Local 2366, 51 F.L.R.A. 768 (1996) [hereinafter INS I]; INS, U.S. Border Patrol, Del Rio, TX and National Border Patrol Council, Local 2366, 51 F.L.R.A. 1561 (1996) [hereinafter INS II] (denial of petitioner's motion for reconsideration).

Upon reconsideration of its initial decision, the FLRA found that INS's refusal to bargain with Local 2366 was not an unfair labor practice ("ulp") because (i) the request for bargaining was not made by AFGE at the level of exclusive representation (i.e., "term negotiations"); (ii) Local 2366 never claimed that the refusal to negotiate at the local level

amounted to an impermissible unilateral change in the status quo relationship between the Local and the INS; and (iii) there was no agreement in effect when the Local's request was made, so there could be no ulp based on the duty to bargain during the term of a contract, *i.e.*, "mid-term bargaining."

At oral argument, union counsel acknowledged that the Local 2366 request for bargaining was not made pursuant to a request by the exclusive representative for term negotiations. Counsel also conceded that he was not arguing that the INS had a duty to bargain with Local 2366 because such bargaining constituted part of the status quo under the 1976 agreement. Thus, the only argument left was that the INS had a duty to negotiate under principles controlling "mid-term bargaining." The FLRA rejected this argument because there was no contract in existence against which to assess such a claim. The mere fact that an agreement has expired does not forestall the obligation to bargain. Thus, INS management would have been obligated to bargain in response to Local 2366 if bargaining of the sort requested were part of the status quo. But the FLRA's refusal to find an ulp was reasonable here because there was no demand for bargaining made by AFGE at the level of exclusive representation and the bargaining sought by Local 2366 was not part of the status quo. Accordingly, we deny the petition for review.

## I. BACKGROUND

### A. *The Master Agreement*

AFGE is the certified exclusive collective bargaining representative for a nationwide bargaining unit of employees of the INS United States Border Patrol, including Border Patrol agents working out of the Border Patrol's Del Rio, Texas sector. INS and AFGE were parties to a collective bargaining agreement that was executed on September 30, 1976 and that expired in late 1978 or early 1979 (the "master agreement"). The terms of the agreement continued to be followed by INS and by AFGE through the events occurring in 1991 which are the subject of this case. Efforts to negotiate a new master agreement extended over a period of

years, and an agreement eventually was reached subsequent to the events in this case.

The 1976 master agreement included a memorandum of understanding, which provided that a "Union Local" would be given advance notice when district management "decided to take actions which will change personnel policies, practices and/or working conditions." Memorandum of Understanding Between AFGE and INS (June 10, 1977), *reprinted in* Joint Appendix ("J.A.") 115. Upon receipt of such notice, "[i]f the [local] Union representatives so elect, they may request negotiations on the changes and/or the impact of the changes as appropriate." *Id.*

### B. *The Union's Request for Bargaining Over the Work Units at Del Rio*

In early 1991, approximately eighty Border Patrol agents were stationed in Del Rio and were divided among approximately six work units. Three were regular units with three shifts, and three were specialized units. About eighteen bargaining unit employees were assigned to each shift in the regular units, with shifts rotating monthly so that assigned agents worked the various shift times for one month out of every three months. The three specialized units—the "War on Drugs" unit; the "Brush" unit; and the "Plain Clothes" unit—operated according to different procedures. An assignment to a specialized unit was regarded as highly desirable: it was an advantage for employees seeking promotion opportunities because it provided employees with specialized experience; it did not require employees to change their working hours from one month to the next; and it involved other beneficial working conditions. An agent seeking to be assigned to one of the specialized units could submit a memorandum to the Patrol Agent In Charge asking for a specialized unit in the next rotation. Agents were also assigned by management to specialized units without submitting a memorandum to the Patrol Agent In Charge.

At some point prior to February 13, 1991, a number of bargaining unit employees approached Local union officials with com-

plaints about the process used by management to select employees for the specialized units. Subsequently, on February 13, 1991, the President of Local 2366 sent a letter to INS's Chief Patrol Agent in the Del Rio sector, requesting "mid-term bargaining in regards to the current policy of assigning Agents to the Brush Unit, War on Drugs Unit, and plainclothes Unit at the Del Rio, Tx., station." *See* Letter from Luis Enrique Solis, President of AFGE Local 2366, to W.B. Gibson, Chief Patrol Agent, Del Rio Sector (Feb. 13, 1991), *reprinted in* J.A. 97. The Local also requested copies of all memoranda submitted by agents applying for appointment to the specialized units.

INS's Chief Patrol Agent for the Del Rio sector responded to the Local's bargaining and information requests in a letter dated February 27, 1991. He claimed that the expired AFGE–INS collective bargaining agreement gave management the right to assign work and that the Local's bargaining request, therefore, had to do with a matter already contained in the parties' 1976 contract. He asserted that, for this reason, the assignment of agents to the specialized units was not an appropriate subject for bargaining. *See* Letter from William B. Gibson, Chief Patrol Agent, to Luis Enrique Solis, President of AFGE Local 2366 (Feb. 27, 1991), *reprinted in* J.A. 98.

C. *The Administrative Law Judge's Decision*

Local 2366 filed two ulp charges with the FLRA, one based on the INS's refusal to bargain, allegedly in violation of 5 U.S.C. § 7116(a)(1), (5) (1994), and the other based on the INS's refusal to provide the requested memoranda, allegedly in violation of 5 U.S.C. § 7116(a)(1), (5), (8). A hearing was held before an administrative law judge ("ALJ"), who concluded, in a decision dated July 13, 1992, that the INS had committed ulps both by refusing to bargain and by refusing to turn over the requested information. *See INS, U.S. Border Patrol, Del Rio, TX and National Border Patrol Council, Local 2366,* Nos. 6–CA–10866, 6–CA–10867 (July 13, 1992) [hereinafter *INS–ALJ*], *reprinted in*

J.A. 119. The INS sought review by the FLRA only on the refusal to bargain charge.

D. *The FLRA Decision*

On January 31, 1996, the FLRA reversed the ALJ, concluding that the INS did not breach its statutory duty to bargain by refusing to bargain with Local 2366 over the procedures used for appointment to the specialized units. The FLRA found that both the ALJ and the parties "have viewed this case as involving mid-term bargaining," *INS I,* 51 F.L.R.A. at 772–73; the Authority noted, however, that the agreement between AFGE and the INS had expired, thus negating any suggestion that INS had a duty to bargain pursuant to principles covering "midterm bargaining." The FLRA therefore concluded that the ALJ should not have relied "on precedent involving an agency's obligation to engage in mid-term bargaining," and held that "[n]o other theory of violation was litigated or is apparent." *Id.* at 773.

E. *The FLRA Decision on the Local's Request for Reconsideration*

On February 15, 1996, Local 2366 filed a timely motion for reconsideration, claiming that its complaint did not limit the INS's breach of its duty to bargain to "mid-term bargaining." However, the FLRA reiterated that no theory of violation other than midterm bargaining "was litigated or is apparent." *INS II,* 51 F.L.R.A. at 1564–65. The FLRA held that its decision to dismiss the complaint "was based solely on the *timing* of that bargaining request ... [T]here is no allegation that, at the time the Union requested to bargain, management had changed conditions of employment or the parties were engaged in term bargaining. The only other theory under which the [INS] could have been obligated to bargain *at that time* is union-initiated mid-term bargaining." *Id.*

II. ANALYSIS

On the record before us, the FLRA did not err in holding that the INS committed no ulp in refusing to bargain with Local 2366. In other words, the FLRA's decision is not "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." *See* 5 U.S.C. § 7123(c) (1994) (explaining that review of the FLRA's actions is governed by the APA); *see also Department of the Navy, Marine Corps Logistics Base, Albany, GA. v. FLRA,* 962 F.2d 48, 53 (D.C.Cir.1992) (The court will defer to the FLRA's interpretation of the Statute provided that it is "reasonable and defensible." (internal quotations omitted)).

In its order on reconsideration, the FLRA correctly indicates that an employer's duty to bargain under the Statute may arise in three general circumstances: (i) in response to a request from an exclusive bargaining agent for "term negotiations" to renegotiate an expiring or expired contract or to negotiate a new agreement, or any other negotiations between management and an appropriate workers' representative over bargainable subjects outside the term of an existing collective bargaining agreement; (ii) in response to a union request for bargaining consistent with the status quo made after the expiration of the governing collective bargaining agreement, *see FAA, Northwest Mountain Region, Seattle WA and FAA, Washington, D.C.,* 14 F.L.R.A. 644, 647–49 (1984); and (iii) in response to an appropriate request for mid-term bargaining. *See INS II,* 51 F.L.R.A. at 1564–65.

Counsel for Local 2366 conceded at oral argument that, in the presentation of this case to the ALJ and the FLRA, the Union did not argue that the disputed bargaining request arose in either of the first two scenarios cited above: counsel acknowledged the request was made by Local 2366, not the national Union, and that it was not part of term negotiations; further, counsel conceded that there was no claim that the status quo under the 1976 agreement required bargaining between the INS and the Local, *see* Transcript at 18–19. Instead, throughout the proceedings before the ALJ, the Local described its demand for negotiations as a request for "mid-term bargaining." Indeed, Local 2366 argued below that the principles covering mid-term bargaining should be expanded to cover the duty to bargain following the expiration of an agreement.

The FLRA correctly found that the INS did not breach its duty to bargain with Local 2366 on the facts of this case. First, the exclusive bargaining agent, the AFGE national union, did not request bargaining as a part of term negotiations. The INS conceded that the national union could have demanded bargaining on an issue of local concern as part of the term negotiations. *See INS I,* 51 F.L.R.A. at 773, n.4. Second, there was no management-imposed change in working conditions that triggered management's duty to bargain. Nor was there an established relationship between the parties that suggested that the employer's refusal to bargain was somehow a change in the status quo. Finally, the request by Local 2366 was not made during the effective period of an existing agreement, which might have triggered the duty to engage in mid-term bargaining.

It is not surprising that the FLRA's first decision in this case drew a request for reconsideration, for that opinion was at best cryptic and seemed to almost ignore the parties' concerns. Had the FLRA explained its position with care in its first opinion, rather than simply pointing to the obvious fallacy of a demand for "mid-term bargaining" when no agreement is in effect, this petition for review might have been avoided. However, as noted above, the FLRA finally amplified its position just enough to make some sense of the case in its order on reconsideration. Relying on the principle that "[w]e will … uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (internal quotations omitted), we find that the agency's opinion on reconsideration is adequate to survive review. The FLRA reasonably found that the Local presented its request in this case as a mid-term bargaining request, which is inapplicable to the circumstances of the case; enumerated the three general circumstances in which a Union may be able to compel bargaining; and found that, after rejecting the mid-term bargaining theory, the Local did not present any other theory on which to compel bargaining. It is clear from the Authority's decisions that the

crucial point in this case is that the request for bargaining came from the wrong level of representation. There is no doubt that if national union representatives had raised the matters of concern to Local 2366, management officials would have been obligated to negotiate over these issues. *See INS I,* 51 F.L.R.A. at 773, n.4.

In an effort to wreak havoc with this litigation, Local 2366 claims the FLRA's opinion virtually vitiates an employer's duty to bargain over local issues once an agreement has expired. We view this contention as nothing more than fanciful advocacy. As the FLRA explained, a union can compel negotiations on bargainable local issues that arise after an agreement expires by demanding bargaining at the appropriate level of representation (here, the national Union) or by requesting bargaining that is consistent with the status quo during the pendency of term negotiations.

### III. CONCLUSION

The petition for review is denied.

Wald, Circuit Judge, concurring in part and dissenting in part:

The majority and I are in agreement on most aspects of this case. We agree that an employer has a duty to bargain under the Federal Service Labor–Management Relations Statute in three instances: "in response to a request from an exclusive bargaining agent for 'term negotiations' "; "in response to a union request for bargaining consistent with the status quo made after expiration of the governing collective bargaining agreement"; and "in response to an appropriate request for mid-term bargaining." Majority opinion ("Maj.op.") at 1218. We also agree that the FLRA's first decision in this case, which held that the INS could not have violated the "mid-term" bargaining obligation because there was no agreement between the INS and AFGE in force at the time Local 2366 made the bargaining request, was seri-

ously deficient. Not only was this decision "cryptic" and "ignor[ing of] the parties' concerns," *id.* at 1218, but also "[t]he mere fact that an agreement has expired does not forestall the obligation to bargain." *Id.* at 1216.

Unlike the majority, however, I cannot see that the FLRA ever concluded that the status quo between the parties did not provide for union-initiated bargaining at the local level so that the INS' refusal to bargain was not an unfair labor practice for this reason.[1] The FLRA's decision relied almost exclusively on the argument that the union had sought only "mid-term" bargaining and the mid-term bargaining obligation does not apply once the "term" of an agreement had expired. But this point is for all intents and purposes irrelevant, since all parties were well aware that the agreement had expired. The only real question in this case from the beginning was whether the union's request for bargaining was consistent with the status quo, or more specifically, whether the status quo here included a provision for union-initiated bargaining at the local level. On this critical question, both the FLRA's original decision and its opinion on reconsideration are essentially mute. The only reference to the level at which bargaining was sought in either of the FLRA's decisions comes in the initial decision where, after commenting that other than the mid-term bargaining obligation no "theory of violation was litigated or is apparent," the FLRA notes in a footnote that the INS "acknowledg[ed] that it would have been obligated to bargain with the exclusive representative over its assignment policy." Joint Appendix ("J.A.") at 141. The FLRA never indicates whether it means by this passing reference that the bargaining request had not been raised in term negotiations or rather that the status quo between the parties did not provide for union-initiated bargaining below the level of exclusive representation. The absence of any discussion of whether the status quo included union-initiated bargaining at the local level is all the more extraordinary given that the ALJ devoted a substan-

---

1. The majority also contends that the Union's counsel "conceded [at oral argument] that there was no claim that the status quo under the 1976 agreement required bargaining between the INS and the Local." Maj. op. at 1218. I do not believe that the Union's counsel made such a concession, since he repeatedly claimed that the Local had been delegated authority to bargain over local issues. *See* Transcript at 7, 9, 11–12, 14, 24–25; *see also* AFGE Brief at 5.

tial portion of his opinion to this issue and found that Local 2366 did have authority to request bargaining on local issues. J.A. at 123–29. While it is true that we should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983), it is also true that we "must judge the propriety of [agency] action solely by the grounds invoked by the agency .... [which] must be set forth with such clarity as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1947); *see also Gannett Rochester Newspapers v. NLRB*, 988 F.2d 198, 205 (D.C.Cir.1993).

It may be that the status quo between the parties at the time of the Local's bargaining request did not provide for union-initiated local level bargaining. But since the FLRA never addressed the appropriate level of bargaining in holding that the IRS had not committed an unfair labor practice here, it seems to me that this case must be remanded to the Authority for it to clarify if that is the basis of its ruling against the union, and if so why. As it is, we are upholding a decision 99 ⁴⁴⁄₁₀₀ percent of which relies on grounds we do not agree with and the other ⁵⁶⁄₁₀₀ percent on grounds we do not understand. That does not comport with our mandate to insure "reasoned decisionmaking" by the agencies whose decisions we review.