Service Employees International Union (AFL-CIO)
Local 226, appellant and cross-appellee, v.
Douglas County School District 001,
appellee and cross-appellant.

___ N.W.2d ___

Filed November 1, 2013.    No. S-13-009.

1. **Commission of Industrial Relations: Appeal and Error.** In reviewing an appeal from the Commission of Industrial Relations in a case involving wages and conditions of employment, an order or decision of the commission may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the commission acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the commission do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.

2. **Labor and Labor Relations.** Nebraska's Industrial Relations Act requires parties to negotiate only mandatory subjects of bargaining.

3. ____. Mandatory subjects of bargaining include the scale of wages, hours of labor, or conditions of employment.

4. ____. Management prerogatives, such as the right to hire, to maintain order and efficiency, to schedule work, and to control transfers and assignments, are not mandatory subjects of bargaining.

5. ____. A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative.

6. ____. Vacation is a mandatory subject of bargaining.

7. **Commission of Industrial Relations: Labor and Labor Relations.** An employer subject to the Industrial Relations Act may implement unilateral changes to mandatory subjects of bargaining only when three conditions have been met: (1) The parties have bargained to impasse, (2) the terms and conditions implemented were contained in a final offer, and (3) the implementation occurred before a petition regarding the year in dispute is filed with the Commission of Industrial Relations.

8. **Labor and Labor Relations: Employment Contracts: Waiver.** A clear and unmistakable waiver of a statutory right may be found in the express language of a collective bargaining agreement, or it may even be implied from the structure of an agreement and the parties' course of conduct.

9. **Labor and Labor Relations: Waiver: Proof.** An employer bears the burden of establishing that a clear and unmistakable waiver of a statutory right in a collective bargaining agreement has occurred.

10. ____: ____: ____. To establish waiver of the right to bargain by union inaction, the employer must first show that the union had clear notice of the employer's intent to institute the change sufficiently in advance of actual implementation so

as to allow a reasonable opportunity to bargain about the change. In addition, the employer must show that the union failed to make a timely bargaining request before the change was implemented.

11. **Labor and Labor Relations: Notice.** Once a union has notice of a proposed change in a mandatory bargaining subject, it must make a timely request to bargain. A union cannot charge an employer with refusal to negotiate when it has made no attempts to bring the employer to the bargaining table.

12. **Commission of Industrial Relations: Courts: Evidence: Appeal and Error.** The Nebraska Supreme Court will consider the fact that the Commission of Industrial Relations, sitting as the trier of fact, saw and heard the witnesses and observed their demeanor while testifying and will give weight to the commission's judgment as to credibility.

13. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Commission of Industrial Relations. Affirmed.

Timothy S. Dowd, of Dowd, Howard & Corrigan, L.L.C., for appellant.

David J. Kramer and D. Ashley Robinson, of Baird Holm, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Wright, J.

## I. NATURE OF CASE

Service Employees International Union (AFL-CIO) Local 226 (Local 226) appeals from the finding of the Commission of Industrial Relations (CIR) that Douglas County School District 001 (District) did not commit a prohibited practice under the version of the Industrial Relations Act (IRA) then in effect, Neb. Rev. Stat. §§ 48-801 to 48-838 (Reissue 2010). Local 226 argues that the District unilaterally changed its vacation accrual policy, declared the issue nonnegotiable, and failed to bargain on a mandatory subject of bargaining.

We conclude the District unilaterally changed its vacation accrual policy but presented Local 226 with opportunities to give input on the policy changes and request negotiations before implementation of the changes. Local 226 failed to take advantage of those opportunities. It negotiated and signed new

collective bargaining agreements (CBA's) for the school year in which the new vacation accrual policy would take effect without requesting negotiations on the new policy. In doing so, Local 226 waived its right to negotiate on the matter of vacation accrual. We affirm the order of the CIR.

## II. SCOPE OF REVIEW

[1] In reviewing an appeal from the CIR in a case involving wages and conditions of employment, an order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. *Employees United Labor Assn. v. Douglas Cty.*, 284 Neb. 121, 816 N.W.2d 721 (2012).

## III. FACTS

Local 226 is the duly certified exclusive bargaining agent for the District's office personnel, educational paraprofessionals, and operations division. For the 2010-11 and 2011-12 school years, Local 226 and the District entered into separate CBA's for each of those three bargaining units. The current dispute over vacation accrual arose while Local 226 and the District were negotiating the CBA's for the 2011-12 school year, but during the time the CBA's for the 2010-11 school year were still in effect.

For the past 20 years, article 9 of the relevant CBA's has set forth the amount of vacation to which each employee was entitled. But the CBA's have never "outlined the manner and method of accrual and distribution of the agreed upon amount of vacation." Rather, at all times relevant to this case, the distribution of vacation was governed by section 4.21 of the District's "Policies and Regulations." The entire policies and regulations were incorporated by reference into article 2 of the CBA's. Article 2 also provided that the District could make changes to the policies and regulations at any time.

The District has made changes to section 4.21 at least 10 times over the past 52 years, both with and without Local 226's approval.

When the District and Local 226 entered into the CBA's for the 2010-11 school year, section 4.21 of the policies and regulations provided that employees were granted their full vacation allotment for the year in a single lump sum on August 1, 2011—the start of the school year. If an employee terminated employment or transferred to a position in which he or she was not eligible for vacation, any unused vacation days would be paid out in the final paycheck. If a new employee was hired or an employee transferred to a vacation-eligible position after August 1, he or she would receive prorated vacation days based on the date of hire or transfer.

Both parties have stipulated that at their meetings on February 9 and March 2, 2011, the District advised Local 226 that the District was "going to make" changes to section 4.21. Under the proposed changes to section 4.21, employees would accrue vacation throughout the school year instead of being granted their vacation allotment in a single lump sum at the beginning of the school year.

On May 16, 2011, the Omaha Public Schools Board of Education adopted the amendments to section 4.21, to be effective August 1. Local 226 did not appear at the board of education meeting to oppose the changes.

On May 17, 2011, the members of Local 226 were notified of the changes adopted by the board of education. In response, Local 226 sent a letter to the District requesting that it "cease and desist from implementing [the vacation accrual] policy." Local 226 characterized the District's action in implementing the new policy as a "unilateral change of a mandatory subject of bargaining[,] which is a prohibited practice." It asked the District to "advise as to [the District's] intentions within the next seven (7) calendar days."

In a reply letter, the District asserted that it "has the right to change its Policies and Regulations so long as those policies don't violate the terms of the [ CBA's]" and that the amendments to section 4.21 were within its authority under the CBA's and not in violation of the provisions of the CBA's addressing

vacation. The District closed by noting, "We remain open . . . to working with Local 226 to address any concerns about the practical application of the revised policy."

Beginning in February 2011 and continuing throughout the summer, the District and Local 226 were engaged in substantive negotiations of the CBA's for the 2011-12 school year. During those negotiations, Local 226 did not propose any changes to the new vacation accrual policy that was scheduled to take effect on August 1.

On September 13 and October 10 and 19, 2011, the District and Local 226 signed the CBA's for the 2011-12 school year for the operations division, paraprofessionals, and office personnel, respectively. The CBA's were effective retroactively to August 1, 2011.

In January 2012, following implementation of the new vacation accrual policy, Local 226 filed petitions with the CIR on behalf of each of the three bargaining groups. It alleged that the District had engaged in "a prohibited practice of bad-faith bargaining in violation of Nebraska Revised Statute §48-824(1) (Reissue 2004)." Local 226 asserted that the District "failed and refused to negotiate or agree to negotiate regarding the [v]acation [a]ccrual [p]olicy and said unilateral action on the part of the [District] constitutes a change in the terms and conditions of employment with respect to a mandatory subject of collective bargaining." It prayed that the CIR order the District "to cease and desist from its continued unilateral actions" and to maintain the previous vacation accrual policy "until or unless [Local 226] has agreed to the same" or the CIR issued an order altering the obligations of the parties. The District filed answers generally denying that it had committed a prohibited practice.

The CIR held a consolidated trial on the petitions. The parties adduced evidence regarding whether past practices between the parties created an implied contractual term regarding the manner and method of vacation accrual, whether Local 226 had an obligation to initiate negotiations after learning of the new vacation accrual policy, and whether Local 226 consented to the new vacation accrual policy by entering into the CBA's for the 2011-12 school year, among other things. Significantly,

the parties presented differing accounts of the level to which the District involved Local 226 in the development of the new vacation accrual policy.

The District adduced evidence that it notified Local 226 and the other unions that it was considering making changes to section 4.21 of the policies and regulations. Dr. Germaine Huber, chief negotiator for the board of education, testified that she "talked with all the unions" about the new vacation accrual policy. According to Huber, during those discussions, the unions expressed concerns about not having vacation early in the school year, in response to which the District incorporated into the new policy the option of applying for an advancement of up to 5 vacation days. As to Local 226, Huber did not specifically describe the District as having "negotiated" with Local 226 over the changes to section 4.21, but maintained that they "had discussions."

Local 226 presented a differing account of the events leading to adoption of the new vacation accrual policy. Suzanne Anderson, president of Local 226, testified that at the February 9 and March 2, 2011, meetings, the District told Local 226 that the vacation accrual policy "was going to happen" and "was going to go through." According to Anderson, Local 226 protested the proposed changes and told the District that it "wanted to negotiate [the new policy]," but the District "said it was not negotiable." Anderson conceded that the District allowed Local 226 to provide feedback on the issue of advance vacation days, but asserted that advancement was the only issue about which it was given the opportunity to provide feedback. She said that Local 226 did not make any suggestions at the meetings other than voicing that Local 226 "wanted to negotiate [the new policy] because we did not want that."

On December 6, 2012, the CIR entered an order finding that the District had not engaged in a prohibited practice. It first concluded that the District had "a duty to bargain over any changes to the vacation accrual policy" because vacation leave was a mandatory subject of bargaining under the IRA. The CIR then turned to the question whether the District had fulfilled its duty to bargain, noting that "the evidence as a

whole does not support the notion that [the District] was not willing to have discussions with [Local 226] about the vacation accrual policy." Rather, the CIR found, based on the evidence, that the District had given Local 226 "sufficient notice" of the proposed change such that Local 226 had an obligation to "make a timely request to bargain." It found the evidence demonstrated that Local 226 failed to negotiate to impasse on the matter. Therefore, the CIR found that Local 226 had failed to prove that the District committed a prohibited practice under § 48-824(1) and dismissed all three petitions.

Local 226 timely appeals, and the District cross-appeals. Pursuant to our statutory authority to regulate the dockets of the appellate courts of this state, we moved the case to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## IV. ASSIGNMENTS OF ERROR

Local 226 generally assigns that the CIR was clearly wrong and acted contrary to law in finding that the District did not commit a prohibited practice by unilaterally implementing changes to section 4.21 of the policies and regulations. More specifically, Local 226 assigns that the CIR was clearly wrong and acted contrary to law in finding that Local 226 had an obligation to bargain to impasse over the District's unilateral change to a mandatory subject of bargaining.

On cross-appeal, the District assigns that the CIR erred in failing to rule that (1) the terms of the CBA's clearly and unambiguously granted the District the right to unilaterally modify section 4.21, (2) the District has an established past practice of modifying section 4.21 during the term of the CBA's, and (3) the District's established practice of modifying section 4.21 formed an implied contract term.

## V. ANALYSIS

### 1. Prohibited Practice

#### (a) Background

Local 226's appeal raises one fundamental question: whether the District committed a prohibited practice under § 48-824(1) by changing section 4.21, and thereby adopting a new vacation accrual policy, without negotiating with Local 226. Section

48-824(1) provided that "[i]t is a prohibited practice for any employer, employee, employee organization, or collective-bargaining agent to refuse to negotiate in good faith with respect to mandatory topics of bargaining."

[2-6] The IRA requires parties to negotiate only mandatory subjects of bargaining. *Scottsbluff Police Off. Assn. v. City of Scottsbluff*, 282 Neb. 676, 805 N.W.2d 320 (2011). Mandatory subjects of bargaining include "'the scale of wages, hours of labor, or conditions of employment.'" *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 114, 817 N.W.2d 250, 255 (2012) (quoting § 48-818). "[M]anagement prerogatives, such as the right to hire, to maintain order and efficiency, to schedule work, and to control transfers and assignments, are not mandatory subjects of bargaining." *Scottsbluff Police Off. Assn. v. City of Scottsbluff*, 282 Neb. at 683, 805 N.W.2d at 328. A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative. *Metro. Tech. Com. Col. Ed. Assn. v. Metro. Tech. Com. Col. Area*, 203 Neb. 832, 281 N.W.2d 201 (1979). Vacation is a mandatory subject of bargaining. See, e.g., *El Paso Elec. Co. v. N.L.R.B.*, 681 F.3d 651 (5th Cir. 2012); *Tanforan Park Food Purveyors Council v. N. L. R. B.*, 656 F.2d 1358 (9th Cir. 1981); *Adams Potato Chips, Inc. v. N. L. R. B.*, 430 F.2d 90 (6th Cir. 1970). See, also, *FOP Lodge 41 v. County of Scotts Bluff*, 13 C.I.R. 270 (2000).

[7] Because of § 48-824(1),

> an employer subject to the IRA may implement unilateral changes to mandatory subjects of bargaining only when three conditions have been met: (1) The parties have bargained to impasse, (2) the terms and conditions implemented were contained in a final offer, and (3) the implementation occurred before a petition regarding the year in dispute is filed with the CIR.

*Scottsbluff Police Off. Assn. v. City of Scottsbluff*, 282 Neb. at 686, 805 N.W.2d at 330. If any of these three conditions are not met, then the employer's unilateral implementation of

changes in mandatory bargaining topics is a per se violation of the duty to bargain in good faith. *Id*.

With that background, we now turn to the facts and issues in the instant case.

### (b) District's Obligation to Negotiate in Good Faith

We first note that the District acted within its authority under the CBA's to amend section 4.21 of the policies and regulations and thereby adopt a new vacation accrual policy. Article 2 of the CBA's for the 2010-11 school year provided:

> Each and every provision of the *Policies and Regulations* incorporated by specific reference herein, and made a part of this Agreement, shall be binding upon both parties hereto, in their language as of the date hereof, throughout the term of this Agreement, notwithstanding that the School District may act to change *Policies and Regulations* after the effective date of this Agreement.

Under that language, the District had the authority to make changes to the policies and regulations while the CBA's for the 2010-11 school year were in effect, but such changes, although permissible, would not be binding upon Local 226 for the 2010-11 school year. Rather, the policies and regulations in effect when the parties entered into the CBA's would continue to bind the parties "in their language as of the date hereof, throughout the term of this Agreement." Thus, under the CBA's with Local 226, the District had the authority to make changes to the policies and regulations but could not enforce those changes against Local 226 until after July 31, 2011. The District acted pursuant to that authority when it proposed and adopted changes to section 4.21 of the policies and regulations for the 2011-12 school year. Both parties agree that the District did not implement the changes to section 4.21 until August 1, 2011—after the CBA's for the 2010-11 school year had expired.

However, despite acting within its powers under the CBA's, the District was still required by the IRA to negotiate regarding the new vacation accrual policy, because it related to a mandatory subject of bargaining. Therefore, under § 48-824(1), the

District was required to negotiate in good faith with Local 226 about the new vacation accrual policy.

The District and Local 226 agree that no formal negotiations on the new vacation accrual policy took place before the new policy was implemented on August 1, 2011. The parties also agree that the District was not permitted to unilaterally implement the new policy on the ground that they had negotiated to impasse, because the parties had not in fact negotiated to impasse. Accordingly, unless Local 226 waived its right to negotiate, the District had committed a prohibited practice and a per se violation of its duty to bargain in good faith by implementing the new vacation accrual policy without first engaging in negotiations with the union.

### (c) Waiver by Local 226

### (i) Preliminary Matters

Generally, the possibility of waiver can be considered only after we have determined that the dispute was not covered by the relevant collective bargaining agreement. See *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 817 N.W.2d 250 (2012). In conducting such an inquiry, we examine whether the collective bargaining agreement "'fully defines the parties' rights'" as to the topic in issue. *Id.* at 117, 817 N.W.2d at 257.

In the instant case, the rights of the parties were not defined by the CBA's. The implementation of the new vacation accrual policy was effective August 1, 2011. The CBA's expired July 31, 2012. It is true that by law, the expired CBA's would continue to govern the parties' obligations to one another. See *Employees United Labor Assn. v. Douglas Cty.*, 284 Neb. 121, 816 N.W.2d 721 (2012). But the parties are governed by the expired CBA's only to the extent that the conditions of employment previously set forth need to be maintained. See *id.* Because the alleged prohibited practice would have occurred after the CBA's had expired, there were no agreements which would determine the parties' rights regarding vacation accrual. It is thus appropriate to consider if Local 226 waived its right to bargain regarding the accrual of vacation. See *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty., supra.*

### (ii) Finding of Waiver
### in CIR's Order

On appeal, Local 226 does not directly address the question of waiver. Local 226 asserts that the CIR determined "Local 226 did not waive its right to bargain" and based its decision that the District did not commit a prohibited practice on Local 226's failure to bargain to impasse. See brief for appellant at 14. At the end of its order, the CIR stated that "[t]he reasons given for [Local 226's] failure to bargain to impasse . . . do not constitute a convincing basis for [Local 226's] claim that [the District] committed a prohibited practice." Based on that statement, Local 226 argues that it should not have been required to negotiate to impasse before filing petitions against the District. That focus on the CIR's mention of negotiating to impasse is unfounded.

Considering the CIR's order in its entirety, it is clear that the decision was based upon Local 226's failure to request negotiations. In its order, the CIR stated that the District provided notice to Local 226 of the proposed changes to the vacation accrual policy, at which point Local 226 became obligated to request negotiations if it objected to the changes. Before reaching the point at which bargaining to impasse was an issue for either party, Local 226 had to request negotiations. The CIR found that Local 226 did not.

Once the CIR concluded that Local 226 failed to even request negotiations, any discussion of negotiating to impasse was extraneous to the CIR's ultimate conclusion. Indeed, it was only in rebutting Local 226's allegations why it did not request negotiations that the CIR addressed the matter of impasse. Implicit in the CIR's order was that Local 226 waived its right to bargain on the issue of vacation accrual by failing to request negotiations. As this finding was the basis of the CIR's decision that the District did not commit a prohibited practice, it is this finding of waiver that we review on appeal.

### (iii) Legal Requirements
### for Waiver

[8,9] It is possible for employees or their representatives to waive the right to bargain on mandatory subjects of bargaining.

A clear and unmistakable waiver of a statutory right may be found in the express language of a collective bargaining agreement, or it may even be implied from the structure of an agreement and the parties' course of conduct. *Hogelin v. City of Columbus*, 274 Neb. 453, 741 N.W.2d 617 (2007). An employer bears the burden of establishing that a clear and unmistakable waiver of a statutory right in a collective bargaining agreement has occurred. *Id*. In the instant case, the District had to establish that Local 226 waived its right to bargain on the change in the vacation accrual policy.

Although there is little Nebraska case law discussing waiver of the right to bargain under the IRA, the federal courts have extensively discussed waiver under the National Labor Relations Act, 29 U.S.C. §§ 151 to 169 (2006) (NLRA). The same standard for waiver exists under the IRA and the NLRA. Compare *Hogelin v. City of Columbus, supra*, with *Intern. Broth. of Elec. Workers v. N.L.R.B.*, 706 F.3d 73 (2d Cir. 2013). And "decisions under the [NLRA] are helpful in interpreting the IRA, but are not binding." *Scottsbluff Police Off. Assn. v. City of Scottsbluff*, 282 Neb. 676, 681, 805 N.W.2d 320, 327 (2011).

The NLRA provides that a union can waive its right to bargain by failing to request bargaining or otherwise inform the employer that the union wishes to bargain. Shortly after the NLRA was enacted, the U.S. Supreme Court explained that an employer cannot be held liable when the employees have failed to act:

> Since there must be at least two parties to a bargain and to any negotiations for a bargain, it follows that there can be no breach of the statutory duty by the employer—when he has not refused to receive communications from his employees—without some indication given to him by them or their representatives of their desire or willingness to bargain. In the normal course of transactions between them, willingness of the employees is evidenced by their request, invitation, or expressed desire to bargain, communicated to their employer.
>
> However desirable may be the exhibition by the employer of a tolerant and conciliatory spirit in the

> settlement of labor disputes, we think it plain that the statute does not compel him to seek out his employees or request their participation in negotiations for purposes of collective bargaining . . . . The employer cannot, under the statute, be charged with refusal of that which is not proffered.

*Labor Board v. Columbian Co*., 306 U.S. 292, 297-98, 59 S. Ct. 501, 83 L. Ed. 660 (1939).

Since the NLRA's enactment, many of the federal circuit courts have similarly recognized the possibility of a waiver by employees or their representatives of the right to bargain on mandatory subjects of bargaining. See, e.g., *Intern. Broth. of Elec. Workers v. N.L.R.B., supra*; *N.L.R.B. v. Solutia, Inc*., 699 F.3d 50 (1st Cir. 2012); *N.L.R.B. v. Seaport Printing & Ad Specialties*, 589 F.3d 812 (5th Cir. 2009); *Regal Cinemas, Inc. v. N.L.R.B*., 317 F.3d 300 (D.C. Cir. 2003); *N.L.R.B. v. Oklahoma Fixture Co*., 79 F.3d 1030 (10th Cir. 1996); *N.L.R.B. v. Unbelievable, Inc*., 71 F.3d 1434 (9th Cir. 1995); *Intermountain Rural Elec. Ass'n v. N.L.R.B*., 984 F.2d 1562 (10th Cir. 1993); *N.L.R.B. v. Pinkston-Hollar Const. Services, Inc*., 954 F.2d 306 (5th Cir. 1992); *N.L.R.B. v. Island Typographers, Inc*., 705 F.2d 44 (2d Cir. 1983); *N. L. R. B. v. Alva Allen Industries, Inc*., 369 F.2d 310 (8th Cir. 1966); *N. L. R. B. v. Rural Electric Company*, 296 F.2d 523 (10th Cir. 1961). Under that case law, "the duty of an employer to recognize and bargain collectively with a union as the collective bargaining representative of employees does not arise until after the union requests the employer to bargain." *N. L. R. B. v. Rural Electric Company*, 296 F.2d at 524. The employer must give the union notice that it intends to make changes to the conditions of employment. See, e.g., *Intern. Broth. of Elec. Workers v. N.L.R.B., supra*; *N.L.R.B. v. Unbelievable, Inc., supra*; *N.L.R.B. v. Island Typographers, Inc., supra*. But once notice is given, it places an obligation upon the union to request bargaining so as not to waive the employees' right to bargain. See, e.g., *N.L.R.B. v. Solutia, Inc., supra*; *N.L.R.B. v. Seaport Printing & Ad Specialties, supra*; *Regal Cinemas, Inc. v. N.L.R.B., supra*; *N.L.R.B. v. Oklahoma Fixture Co., supra*; *N.L.R.B. v. Unbelievable, Inc., supra*; *Intermountain Rural*

*Elec. Ass'n v. N.L.R.B., supra*; *N.L.R.B. v. Pinkston-Hollar Const. Services, Inc., supra*; *N.L.R.B. v. Island Typographers, Inc., supra*; *N. L. R. B. v. Alva Allen Industries, Inc., supra*; *N. L. R. B. v. Rural Electric Company, supra*.

The union must act with "due diligence in requesting bargaining." *N.L.R.B. v. Pinkston-Hollar Const. Services, Inc.*, 954 F.2d at 310. Any less diligence amounts to a waiver by the bargaining representative of its right to bargain. *Id*. "[A] union cannot simply ignore its responsibility to initiate bargaining over subjects of concern and thereafter accuse the employer of violating its statutory duty to bargain." *N.L.R.B. v. Island Typographers, Inc.*, 705 F.2d at 51. However, "'[a] union is "not required to go through the motions of requesting bargaining[]" . . . if it is clear that an employer has made its decision and will not negotiate.'" *N.L.R.B. v. Solutia, Inc.*, 699 F.3d at 64 (alteration and ellipsis in original) (quoting *Regal Cinemas, Inc. v. N.L.R.B., supra*).

[10] Under federal case law, as under Nebraska law, the burden of proving waiver rests on the employer:

> To establish waiver of the right to bargain by union inaction, the employer must first show that the union had "clear notice of the employer's intent to institute the change sufficiently in advance of actual implementation so as to allow a reasonable opportunity to bargain about the change." . . . In addition, the employer must show that "the union failed to make a timely bargaining request before the change was implemented."

*N.L.R.B. v. Unbelievable, Inc.*, 71 F.3d at 1440-41 (citations omitted) (quoting *American Distributing Co., Inc. v. N.L.R.B.*, 715 F.2d 446 (9th Cir. 1983) (amended and superseded on denial of rehearing)). See, also, *Hogelin v. City of Columbus*, 274 Neb. 453, 741 N.W.2d 617 (2007). Nonetheless, it is important to remember that "[t]he negotiations of [an employer] must be measured in the light of surrounding circumstances, which include corresponding attempts at good faith negotiation by the Union." *N. L. R. B. v. Alva Allen Industries, Inc.*, 369 F.2d 310, 321 (8th Cir. 1966). As the Eighth Circuit has explained,

[a] union cannot charge an employer with refusal to negotiate when it has made no attempts to bring the employer to the bargaining table. . . . Nor is a union in a good position to charge an employer with bargaining in bad faith when the union itself has exhibited little, if any, real desire to reach a bona fide contract benefitting the members of the bargaining unit which it, by law, is required to represent.

*Id*. (citations omitted).

### (iv) Application to
### Present Appeal

[11] In its order, the CIR concluded that Local 226 waived its right to bargain on the subject of vacation accrual, because Local 226 had not made a timely request to bargain. In doing so, the CIR followed its holding in *F.O.P., Lodge No. 21 v. City of Ralston, NE*, 12 C.I.R. 59, 66 (1994) (quoting *N. L. R. B. v. Alva Allen Industries, Inc., supra*), in which the CIR adopted the following proposition:

Once a union has notice of a proposed change in a mandatory bargaining subject, it must make a timely request to bargain. "A union cannot charge an employer with refusal to negotiate when it has made no attempts to bring the employer to the bargaining table."

As noted above, this proposition is widely enforced throughout the federal courts. We agree with the CIR's adoption and continued enforcement of waiver in such a fashion.

Applying that standard of waiver to the facts in this case, we conclude that after receiving notice of the District's intended changes to the vacation accrual policy, Local 226's failure to make a timely request to bargain over the new vacation accrual policy changes constituted a waiver of Local 226's right to bargain on what would otherwise be a mandatory subject of bargaining. By showing that Local 226 received notice of the District's plans to implement a new vacation accrual policy but failed to request bargaining on the issue, the District proved a clear and unmistakable waiver by Local 226.

a. Notice to Local 226

The evidence adduced before the CIR clearly showed that the District provided sufficient notice to Local 226 that it intended to make changes to the vacation accrual policy. Huber testified that she notified Local 226 and the other unions that the board of education was considering making changes to section 4.21 of the policies and regulations. She explained that the provision of the new policy allowing employees to take up to 5 days advance vacation was explicitly added to address concerns raised by the unions when she talked with them.

Anderson, president of Local 226, agreed that the District gave her "advanced information about policies and regulations that [it was] considering making changes to," including the changes to the vacation accrual policy in 2011. She also confirmed Huber's testimony that the provision allowing for the advancement of vacation days was "a result of issues and concerns expressed by Local 226 to [the District] as [it was] contemplating changes to the policy." In addition to providing advance notice that it was contemplating changes to section 4.21, the District held two meetings with Local 226 to discuss the changes. As noted above, the parties stipulated that on February 9 and March 2, 2011, the District met with Local 226 "to advise Local 226 of the changes [the District] was going to make" to the vacation accrual policy.

The evidence demonstrated that after learning of the proposed changes, Local 226 had multiple opportunities to request negotiations with the District. The District engaged Local 226 and the other unions in discussions about changes to the vacation accrual policy prior to adopting those changes. The District contacted the unions with advance information about the possible changes and held meetings in February and March 2011.

Anderson testified that at those meetings, the policy was presented as "nonnegotiable." However, that testimony is contradicted by Anderson's testimony that at the meetings, Local 226 was allowed to give "feedback" that was later incorporated into the new policy. As Anderson admitted, the provision

allowing for advance vacation days was added in response to the concerns of Local 226 and other unions.

On May 16, 2011, the board of education considered and adopted the new vacation accrual policy at a public meeting. Anderson testified that after the adoption of the new policy but before it took effect on August 1, the District talked with Local 226 about concerns it had with the policy. She stated that the District indicated it would work with Local 226 to address any concerns.

On May 17, 2011, the District distributed a letter to its employees informing them of the new vacation accrual policy adopted on May 16. Letters were also sent to employees on August 12 and 22 to advise them of their vacation allotment. The District's benefits specialist testified that all of the letters were submitted to Local 226 for review prior to being sent. All three letters also invited employees to contact the District's benefits specialist if they had any questions.

Local 226 had numerous opportunities to express its concerns about the new vacation accrual policy while negotiating with the District about the CBA's for the 2011-12 school year. Local 226 and the District met for negotiations no less than 15 times between the time when Local 226 was informed of the proposed changes and when the changes were implemented. Because there were many negotiations scheduled before implementation of the new vacation accrual policy, Local 226 had multiple opportunities to raise any concerns that it had and to add the new policy to the agenda for negotiations.

### b. Request to Bargain

Local 226 did not request negotiations over the new vacation accrual policy. Rather, it consistently passed over the opportunity to do so. At the February and March 2011 meetings with the District, Local 226 did not raise any concerns other than those relating to vacation advancement. Local 226 did not protest the new policy at the board of education meeting on May 16 before it was adopted. And despite the District's indication that it would work with Local 226 to address its

concerns, Local 226 did not raise any specific concerns or request negotiations on the subject of vacation accrual.

On June 10, 2011, Local 226 did send a letter to the District, alleging that the new vacation accrual policy was a prohibited practice. Local 226 requested that the District "cease and desist from implementing [the vacation accrual] policy." Local 226 asked the District to "advise as to [the District's] intentions." When the District responded on June 17, it stated, "We remain open . . . to working with Local 226 to address any concerns about the practical application of the revised policy." Local 226 did not respond. Rather, Local 226 used its letter of June 10 as an excuse not to negotiate, because it had already expressed its objections.

Despite alleging on June 10, 2011, that the District had committed a prohibited practice, Local 226 did not file petitions with the CIR based on that prohibited practice until 7 months later, on January 27 and 30, 2012. It entered into negotiations with the District and ultimately signed new CBA's for the 2011-12 school year well before filing this action. In the face of a full negotiation schedule and the prospect of adopting the CBA's that would make the new policy binding on its members, Local 226 still did not raise the matter of vacation accrual. Indeed, Huber testified that Local 226 did not make any substantive proposals regarding vacation accrual during negotiations of the CBA's for the 2011-12 school year. Anderson admitted that Local 226 "did not bring it to the table."

At the conclusion of these scheduled negotiations, Local 226 did in fact enter into new CBA's with the District. These CBA's explicitly incorporated the entire policies and regulations, including the new vacation accrual policy. Thus, upon entering into these new CBA's, the vacation accrual policy to which Local 226 objected was made binding upon Local 226 and its members.

Local 226 argues that it did request negotiations with the District and maintains that the District presented the vacation accrual policy as nonnegotiable. The CIR considered and rejected those claims. After mentioning Anderson's testimony that Local 226 requested negotiations about the new vacation accrual policy, the CIR found that the District did not

commit a prohibited practice precisely because Local 226 failed to request negotiations. In so finding, the CIR explicitly rejected Local 226's contention that it requested negotiations and implicitly rejected the testimony upon which the claim was based. Furthermore, the CIR rejected much of Anderson's testimony attempting to explain why Local 226 did not negotiate. Significantly, the CIR found that Anderson's testimony that the District considered the vacation accrual policy nonnegotiable was not supported by the other evidence in the case. Taken as a whole, the CIR's order concluded that the evidence supported the District's version of the facts over that of Local 226.

[12] This court will consider the fact that the CIR, sitting as the trier of fact, saw and heard the witnesses and observed their demeanor while testifying and will give weight to the CIR's judgment as to credibility. *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002*, 265 Neb. 8, 654 N.W.2d 166 (2002). As an appellate court, we do not reweigh testimony. See *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). The testimony before the CIR presented two versions of the facts surrounding the new vacation accrual policy. Per our scope of review, we give weight to the CIR's acceptance of one version of the facts over the other.

### c. Conclusion as to Waiver

We conclude Local 226 was put on notice of the proposed changes and consequently became obligated to request bargaining if it had any concerns about the new policy. Local 226 was given more than sufficient opportunity to express concerns about the new vacation accrual policy and negotiate regarding it. Those opportunities were available before the policy went into effect and before it became binding upon Local 226.

Considering the evidence as a whole and giving deference to the CIR's weighing of the evidence, we conclude that Local 226 did not request to bargain. Instead, the preponderance of the competent evidence before the CIR clearly demonstrated that Local 226 sat on the knowledge that the District planned to make changes to the vacation accrual policy and signed

new CBA's that made those changes binding on Local 226's members. Such evidence established a clear and unmistakable waiver of Local 226's right to negotiate.

By showing that Local 226 failed to request bargaining after being placed on notice of the proposed changes, the District proved clear and unmistakable waiver by Local 226 of the right to negotiate. Because Local 226 waived such right, the District did not commit a prohibited practice by failing to negotiate with Local 226 about the new vacation accrual policy. The CIR did not err in so finding.

## 2. CROSS-APPEAL

In the event that we did not affirm the CIR's finding that Local 226 failed to bargain, thereby precluding a ruling that the District committed a prohibited practice, the District's cross-appeal provided three alternate routes by which the CIR could have reached the same result. The District argues that the CIR erred in not finding against Local 226 for one of those three reasons and asks that we affirm the ultimate decision of the CIR.

[13] Having affirmed the CIR's decision, we do not reach the District's errors on cross-appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Co-op, ante* p. 49, 835 N.W.2d 30 (2013).

## VI. CONCLUSION

For the aforementioned reasons, we affirm the CIR's order finding that the District did not commit a prohibited practice and dismissing Local 226's petitions.

AFFIRMED.

MILLER-LERMAN, J., not participating.