Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/15/2017 05:14 PM CDT

- 703 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

Public Association of Government Employees, appellee,
v. City of Lincoln, Nebraska, appellant.

___ N.W.2d ___

Filed May 16, 2017.    No. A-16-007.

1. **Commission of Industrial Relations: Appeal and Error.** In reviewing an appeal from the Commission of Industrial Relations in a case involving wages and conditions of employment, an order or decision of the commission may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the commission acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the commission do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.

2. **Labor and Labor Relations.** It is a prohibited practice for any employer, employee, employee organization, or collective-bargaining agent to refuse to negotiate in good faith with respect to mandatory topics of bargaining.

3. ____. Mandatory subjects of bargaining include the scale of wages, hours of labor, or conditions of employment.

4. ____. Management prerogatives, such as the right to hire, to maintain order and efficiency, to schedule work, and to control transfers and assignments, are not mandatory subjects of bargaining.

5. ____. A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative.

6. ____. Ordinarily, mandatory subjects of bargaining must be negotiated between the parties, and as such, an employer may not alter a term or condition of employment unless it has bargained with regard to the issue.

- 704 -

Nᴇʙʀᴀꜱᴋᴀ Cᴏᴜʀᴛ ᴏꜰ Aᴘᴘᴇᴀʟꜱ Aᴅᴠᴀɴᴄᴇ Sʜᴇᴇᴛꜱ
24 Nᴇʙʀᴀꜱᴋᴀ Aᴘᴘᴇʟʟᴀᴛᴇ Rᴇᴘᴏʀᴛꜱ
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

7. ____. No bargaining is required before altering a mandatory subject of bargaining if the issue is covered by the collective bargaining agreement.

8. ____. When parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject.

9. **Contracts.** Because of the fundamental policy of freedom of contract, parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the courts to interfere with the parties' choice.

10. **Labor and Labor Relations: Contracts.** Where the contract fully defines the parties' rights as to what would otherwise be a mandatory subject of bargaining, the contract will control, and under the contract coverage rule, if the issue was covered by the collective bargaining agreement, then the parties have no further obligation to bargain the issue.

Appeal from the Commission of Industrial Relations. Affirmed.

John C. Hewitt, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellant.

Gary L. Young and Thomas P. McCarty, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

Mᴏᴏʀᴇ, Chief Judge, and Iɴʙᴏᴅʏ and Rɪᴇᴅᴍᴀɴɴ, Judges.

Rɪᴇᴅᴍᴀɴɴ, Judge.

## INTRODUCTION

The City of Lincoln, Nebraska (the City), appeals from a decision of Nebraska's Commission of Industrial Relations (CIR), which determined that when the City unilaterally changed employee shifts and standby staffing without bargaining with the Public Association of Government Employees (PAGE), it violated Nebraska's Industrial Relations Act (IRA). See Neb. Rev. Stat. §§ 48-801 through 48-842 (Reissue 2010 & Cum. Supp. 2016). Finding no error in the CIR's decision, we affirm.

## BACKGROUND

PAGE is a labor union which represents various employees of the City, including street maintenance employees. PAGE and the City were operating under a collective bargaining agreement (CBA) that was effective from August 14, 2014, through August 31, 2016. Relevant to the matter at hand, the CBA provides:

### ARTICLE 3 - MANAGEMENT RIGHTS

. . . .

Section 2. The Union acknowledges the concept of inherent management rights. These rights, powers, and authority of the City include, but are not limited to the following:

. . . .

C. The right to establish, allocate, schedule, assign, modify, change, and discontinue City operations and work shifts, so long as changes in days off, shifts, and working hours, other than in emergencies, which shall include but not be limited to, unplanned absences, are made only after the order for such change has been posted for seven (7) calendar days; except in instances which affect a single work crew or a single employee, the City will make a good faith attempt to deliver such notice.

. . . .

### ARTICLE 18 - HOURS OF WORK
### AND DUTY SHIFTS

Section 1. Eight (8) consecutive hours, exclusive of lunch, shall constitute a day[']s work and five (5) consecutive calendar days shall constitute a week[']s work. From time to time, ten (10) hour working shifts are available, the option, within demand constraints, to work these shifts will be made available to employees working eight (8) hour shifts. When an employee elects to change his work shift to either an eight (8) or ten (10) hour work shift, he may not, without management consent, again

- 706 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

change his work shift from eight (8) to ten (10) hours or from ten (10) to eight (8) hours.

Section 2. Each employee shall be entitled to two (2) or three (3) days off each week which shall be consecutive, unless in conflict with shift or other assignments.

. . . .

Section 4. All employees who are regularly assigned to second and third shifts shall be paid an additional fifty-two (52) cents per hour for second shift and seventy (70) cents per hour for third shift. . . .

. . . .

ARTICLE 19 - OVERTIME, CALL BACK,
AND STAND-BY PAY

. . . .

Section 5. ALTERATION OF ORDINARY SHIFT[.] Except for those employees that are on paid on-call or standby status, an employee may be called into work on a shift that is not his or her regular shift on a mandatory basis only when there is an emergency.

In January 2015, after meeting with PAGE representatives on several occasions, the City unilaterally implemented changes to employee work schedules, including imposing a mandatory standby staffing plan. Previously, employees worked 8-hour shifts with 2 consecutive days off or could elect to work 10-hour shifts with 3 consecutive days off. They were also able to volunteer for standby status during winter months, which permitted them to be called into work during inclement weather. Under the new standby plan, street maintenance workers were mandatorily placed on standby status where they were required to report for duty if called upon, and if called to duty, they were required to work on a 7-day-per-week basis subject to 12-hour shifts or face disciplinary action.

In July 2015, PAGE filed a prohibited practice petition in the CIR alleging that in implementing the new standby plan, the City engaged in a prohibited practice in violation

- 707 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

of § 48-824(1) and (2)(e) based upon its "unilateral change to, and refusal to negotiate in good faith over, a mandatory subject of bargaining." The City filed an answer generally denying the allegations and asserting that the CIR lacked jurisdiction over the matter, the changes implemented by the standby plan were not mandatory subjects of bargaining, and the changes were covered by the terms of the CBA.

After conducting a trial, the CIR entered an order finding that because the facts of the case constituted a viable prohibited practice claim, it had jurisdiction to adjudicate the matter. The CIR concluded that the employee work schedule changes the City implemented were mandatory subjects of bargaining, because they would "'vitally affect' the hours and terms and conditions of employment" and the past practice of voluntary standby duty had been in place for at least 20 years such that employees could reasonably expect the practice to continue. As such, the City had a duty to bargain in good faith with PAGE regarding implementation of the plan, and because it failed to do so, its unilateral implementation of the plan was a "per se violation of the [IRA] and a prohibited practice." The City appeals.

## ASSIGNMENTS OF ERROR

The City assigns, restated and renumbered, that the CIR erred in (1) finding the City's standby plan constituted a mandatory subject of bargaining under the IRA and not a management prerogative, (2) failing to find the City's standby plan was covered by the parties' CBA and therefore not subject to a duty to bargain under the IRA, (3) finding the implementation of the standby plan constituted a per se violation of the IRA and a prohibited practice, and (4) finding it had jurisdiction to determine whether the City committed a prohibited practice.

## STANDARD OF REVIEW

[1] In reviewing an appeal from the CIR in a case involving wages and conditions of employment, an order or decision

- 708 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. *Service Empl. Internat. v. Douglas Cty. Sch. Dist.*, 286 Neb. 755, 839 N.W.2d 290 (2013).

## ANALYSIS

The City argues that the CIR erred in finding that the standby plan was a mandatory subject of bargaining rather than a management prerogative. We disagree.

[2-5] It is a prohibited practice for any employer, employee, employee organization, or collective-bargaining agent to refuse to negotiate in good faith with respect to mandatory topics of bargaining. *Service Empl. Internat., supra*. See, also, § 48-824(1). Mandatory subjects of bargaining include the scale of wages, hours of labor, or conditions of employment. *Service Empl. Internat., supra*. Management prerogatives, such as the right to hire, to maintain order and efficiency, to schedule work, and to control transfers and assignments, are not mandatory subjects of bargaining. *Id*. A matter which is of fundamental, basic, or essential concern to an employee's financial and personal concern may be considered as involving working conditions and is mandatorily bargainable even though there may be some minor influence on educational policy or management prerogative. *Id*.

The City argues that the changes implemented by the mandatory standby plan were solely to employee work schedules and therefore fall within management prerogative. We agree that scheduling work is not a mandatory subject of bargaining; however, the changes to standby staffing were not simply scheduling employees to work. Rather, the mandatory plan would force employees to work 12-hour shifts

- 709 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

instead of 8- or 10-hour shifts and would require employees to forgo their weekends off, working 7 consecutive days rather than 4 or 5 days with 2 or 3 consecutive days off. These are matters of employee work hours—a mandatory subject of bargaining.

In addition, employees would no longer have a set schedule, but instead, they would be placed on mandatory standby status with little notice. As the CIR concluded, the plan implemented by the City would vitally affect the hours and terms and conditions of employment and was therefore a mandatory subject of bargaining. Indeed, the significant change in lifestyle required by the mandatory standby plan constitutes a matter of fundamental, basic, or essential concern to an employee's personal concern and therefore may be considered as involving working conditions. The CIR's conclusion is not contrary to law, and we therefore find no error in its decision classifying the changes as mandatory subjects of bargaining.

[6,7] Ordinarily, mandatory subjects of bargaining must be negotiated between the parties, and as such, an employer may not alter a term or condition of employment unless it has bargained with regard to the issue. See *Service Empl. Internat. v. Douglas Cty. Sch. Dist.*, 286 Neb. 755, 839 N.W.2d 290 (2013). However, no bargaining is required before altering a mandatory subject of bargaining if the issue is "'covered by'" the CBA. *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 115, 817 N.W.2d 250, 255 (2012).

[8-10] Generally, when parties bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. *Douglas Cty. Health Ctr. Sec. Union, supra*. Because of the fundamental policy of freedom of contract, the parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the courts to interfere with the parties' choice. See *id*. Therefore,

- 710 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

where the contract fully defines the parties' rights as to what would otherwise be a mandatory subject of bargaining, the contract will control, and under the contract coverage rule, if the issue was covered by the collective bargaining agreement, then the parties have no further obligation to bargain the issue. See *id*.

In *Douglas Cty. Health Ctr. Sec. Union, supra*, the Supreme Court concluded that the issue of subcontracting of bargaining unit jobs was clearly covered by the applicable CBA, because the CBA specifically noted the steps that the county needed to follow when the contracting out or subcontracting of bargaining unit work had the effect of eliminating bargaining unit jobs, and the elimination of bargaining unit jobs was at issue in the dispute. The steps included notifying the union of the impending changes and providing the union with an opportunity to discuss with the county the necessity and effect on employees. The Supreme Court therefore concluded that the issue of subcontracting of bargaining unit jobs was covered by the CBA.

Similarly, in *Dept. of Navy, Marine Corps Logistics Base v. FLRA*, 962 F.2d 48 (D.C. Cir. 1992), cited by the Supreme Court in *Douglas Cty. Health Ctr. Sec. Union, supra*, the D.C. Circuit Court of Appeals held that the reassignment of employees and establishment of new performance standards were covered by the CBA. The court relied on the fact that the CBA contained provisions covering the implementation of both actions, including detailed provisions concerning the procedures for temporarily reassigning employees or modifying performance standards. The CBA defined when employee "details" would be implemented, to what kinds of positions an employee may be detailed, how long a detail may last, and what effect a detail would have on an employee's salary and liability for union dues. 962 F.2d at 51. Similarly, the CBA established comprehensive procedures that the agency must follow when it modified performance criteria—including advance notice to employees, an opportunity for employee

- 711 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

participation in the creation of performance standards, and an overarching requirement that the standards implemented be fair and reasonable. Accordingly, the appellate court held that under any reasonable definition of the term "covered by," the impact and implementation matters related to employee details and performance criteria were covered by the CBA.

In the present case, the main change at issue is the modification of the procedure for standby staffing, which in turn alters employees' work hours, days, and overtime status. The parties' CBA refers to the hours and shifts employees work, contemplating three separate work shifts and 8- or 10-hour shifts. Thus, under article 3 of the CBA, the City retained the right to change employee work shifts, meaning, for example, it could move employees from first shift to second shift, so long as 7 days' notice was provided. The CBA is silent on the issue of voluntary standby staffing (except as to the issue of pay) and says nothing about the steps the City would need to follow to make standby staffing mandatory—thereby imposing mandatory overtime on employees and altering their work hours and days off. Article 19 of the CBA contemplates mandatorily calling employees into work on a shift that is not a regular shift but applies only in the case of an emergency, which does not affect the changes at issue here. We therefore cannot find that the changes implemented by the City are covered by the CBA. As a result, the parties were required to negotiate prior to implementing any changes to the standby staffing procedures.

Because we conclude that the changes the City implemented were not covered by the CBA, we also reject PAGE's argument that the issues became moot with the expiration of the CBA. We additionally find no merit to the City's argument that the CIR lacked jurisdiction over the matter because, instead of a prohibited practice claim, the matter was actually a breach of contract claim over which the CIR does not have jurisdiction. See *Lamb v. Fraternal Order of Police Lodge No. 36*, 293 Neb. 138, 876 N.W.2d 388 (2016) (CIR

- 712 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
PUBLIC ASSN. OF GOVT. EMPL. v. CITY OF LINCOLN
Cite as 24 Neb. App. 703

has no jurisdiction over breach of contract claims, but for claims involving determination of prohibited practice under IRA, jurisdiction lies with CIR). Because we determined that the claim was, in fact, a prohibited practice, we conclude that the CIR did not err in exercising its jurisdiction over PAGE's claim.

CONCLUSION

We conclude that the City's implementation of changes to standby staffing, employee work hours, and days off was a mandatory subject of bargaining that was not covered by the CBA. Therefore, the City had a duty to negotiate the changes with PAGE prior to implementation. Because the City failed to do so, it committed a prohibited practice under the IRA. Accordingly, we affirm the decision of the CIR.

AFFIRMED.