Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/17/2026 08:07 AM CDT

- 208 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

Nebraska Association of Public Employees Local 61
of the American Federation of State, County,
and Municipal Employees, appellant, v.
State of Nebraska, appellee.

___ N.W.3d ___

Filed April 17, 2026.    No. S-25-026.

1. **Commission of Industrial Relations: Appeal and Error.** Any order or decision of the Commission of Industrial Relations may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the commission acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the commission do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole.

2. **Labor and Labor Relations: Contracts.** If a topic is covered by a collective bargaining agreement, then the parties have no further obligation to bargain over the issue.

3. **Contracts.** The court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them.

4. **Actions: Words and Phrases.** A frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.

5. **Actions.** Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question.

Appeal from the Commission of Industrial Relations. Affirmed in part, and in part reversed.

Abby Osborn, of Shiffermiller Law Office, P.C., L.L.O., and Richard Griffin and Kara A. Naseef, of Bredhoff & Kaiser, P.L.L.C., pro hac vice, for appellant.

Michael T. Hilgers, Attorney General, Zachary A. Viglianco, and Cody S. Barnett for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ., and Martinez, D.J.

Papik, J.

After Governor Jim Pillen issued an executive order generally prohibiting state executive branch employees from working remotely, the Nebraska Association of Public Employees Local 61 of the American Federation of State, County, and Municipal Employees (NAPE) demanded to bargain over the executive order. The State of Nebraska refused the demand. NAPE responded by filing a petition with Nebraska's Commission of Industrial Relations (CIR), alleging that the State had violated Nebraska labor statutes by declining to negotiate. Following a hearing, the CIR found NAPE's claim lacked merit and dismissed it with prejudice. It also found that NAPE had pursued the action in bad faith and, consequently, ordered NAPE to pay the State over $40,000 for attorney fees and costs.

Now on appeal, NAPE challenges the CIR's dismissal of its petition and the award of attorney fees. We find no error in the CIR's dismissal of NAPE's petition but conclude that the CIR erred in its award of attorney fees. Accordingly, we reverse the award of attorney fees, but otherwise affirm the decision of the CIR.

## I. BACKGROUND

### 1. Governor's Executive Order and NAPE's Demand to Bargain

Governor Pillen entered an executive order in November 2023 that generally required state employees to work "in the

- 210 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

office, facility, or field location assigned by their agency and not from a remote location." The executive order also provided, however, that "[a]gency heads" could grant exceptions to individual employees in some circumstances. The executive order allowed exceptions to be granted (1) for employees whose assigned work hours were outside normal business hours, (2) for employees who moved away from their original office duty location "and for whom no reasonable in-office arrangement is possible," (3) when agencies are at "full building occupancy and new office space would have to be acquired at additional cost," (4) when an agency head "determines that an exception is necessary to sustain critical operations in a business area with a workforce shortfall," and (5) for "[a]ny other exception or circumstances imposed by law."

NAPE, a labor union representing many State employees, demanded to bargain over the remote work executive order, asserting that remote work was a mandatory subject of bargaining. The State declined to bargain over the issue. It took the position that the existing collective bargaining agreement permitted the implementation of the executive order regarding remote work and that the State was therefore not obligated to bargain over it.

## 2. CIR PROCEEDINGS

NAPE responded by filing a petition in the CIR. The petition alleged that the State had engaged in a prohibited labor practice under Neb. Rev. Stat. §§ 48-824 (Reissue 2021) and 81-1386 (Reissue 2024) by refusing to negotiate over a mandatory subject of bargaining.

At a hearing on NAPE's prohibited practices petition, the CIR received the then-operative collective bargaining agreement between NAPE and the State. Relevant to this appeal, paragraph 3.8 of that agreement provided that the State had the "right to increase, reduce, change, modify and alter the composition and site of the work force." Paragraph 3.12 of the agreement provided that the State also retained the right

- 211 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

"to adopt, modify, change, enforce, or discontinue any existing rules, regulations, procedures or policies."

The CIR also received evidence regarding the negotiation of the operative collective bargaining agreement. Relevant to this appeal, the CIR received evidence that during discussions regarding the collective bargaining agreement, NAPE proposed a provision that would have allowed employees the right to request remote work assignments and added that such requests "will not be unreasonably denied." NAPE's chief negotiator testified that the State was not willing to discuss NAPE's proposed remote work language, saying that it was a "nonstarter." NAPE then withdrew its remote work proposal. NAPE's chief negotiator admitted that employees received record salary increases in the finalized collective bargaining agreement.

After the hearing, the CIR dismissed NAPE's prohibited practices petition with prejudice. The CIR concluded that the State was not obligated to bargain over the remote work executive order because even if it was a mandatory subject of bargaining, the issue was "'covered by'" the existing collective bargaining agreement. The CIR explained that under the contract coverage rule adopted by this court, see *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 817 N.W.2d 250 (2012), if an issue is covered by the collective bargaining agreement, the parties are not obligated to bargain over it even if it would otherwise be a mandatory subject of bargaining. The CIR concluded that language in the collective bargaining agreement permitted the State to "unilaterally change work sites and related policies."

Alternatively, the CIR found that NAPE had waived the right to bargain over the remote work policy. In reaching this conclusion, the CIR relied on the evidence introduced at the hearing that NAPE made but later withdrew a remote work policy during the negotiations for the governing collective bargaining agreement.

The CIR also found that the State was entitled to an award of attorney fees. In its order, the CIR wrote that NAPE could

- 212 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

not have "reasonably or in good faith believed they would prevail by bringing this case" before the CIR. The CIR suggested that NAPE instead brought the case to delay the implementation of the executive order or to increase its membership numbers. The CIR identified one of its own rules, Rules of the Nebraska Commission of Industrial Relations 42 (rev. 2015) (Rule 42), as well as Neb. Rev. Stat. § 25-824 (Reissue 2016) as the basis for its award of attorney fees. The CIR ordered NAPE to pay the State $42,234.63 for attorney fees incurred in the matter.

NAPE filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

NAPE assigns many errors on appeal. We have condensed and paraphrased those assignments as follows: (1) The CIR erred in finding that NAPE's prohibited practices petition lacked merit, and (2) the CIR erred in its award of attorney fees to the State.

## III. STANDARD OF REVIEW

[1] Any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: (1) if the CIR acts without or in excess of its powers, (2) if the order was procured by fraud or is contrary to law, (3) if the facts found by the CIR do not support the order, and (4) if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. *Douglas Cty. Health Ctr. Sec. Union, supra*.

## IV. ANALYSIS

### 1. DISMISSAL OF NAPE'S PETITION

NAPE's first argument in this appeal is that the CIR erred by dismissing its petition. NAPE argues that it proved the State engaged in a prohibited labor practice and that the CIR erred by finding otherwise.

- 213 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

NAPE alleged in this case that the State violated §§ 48-824 and 81-1386 by refusing its demands to bargain over the executive order generally prohibiting covered employees from working remotely. Under § 48-824(1), "[i]t is a prohibited practice for any public employer . . . to refuse to negotiate in good faith with respect to mandatory topics of bargaining." See, also, *Employees United Labor Assn. v. Douglas Cty.*, 284 Neb. 121, 124, 816 N.W.2d 721, 725 (2012) (under § 48-824(1), "it is a 'prohibited practice' for any state government employer to refuse to negotiate in good faith with employee union representatives on mandatory topics of bargaining"). Section 81-1386 contains similar language. Because no party to this case contends that § 81-1386(1) imposes obligations beyond those imposed by § 48-824, we limit our consideration to § 48-824.

We could begin our review in this case by considering whether NAPE demanded to enter negotiations regarding a mandatory topic of bargaining. The parties disagreed on this point before the CIR and renew those arguments before us on appeal. But the CIR did not decide whether NAPE demanded to bargain over a mandatory subject of bargaining. It instead relied on the "contract coverage rule," *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 117, 817 N.W.2d 250, 256 (2012), and concluded that because the parties' collective bargaining agreement covered the issues on which NAPE sought to bargain, the State had no obligation to bargain over those issues even if they might otherwise be mandatory subjects of bargaining. We begin our analysis with whether that determination by the CIR was correct, but we first provide some background regarding the contract coverage rule.

### (a) Contract Coverage Rule Background

[2] In determining whether a public employer has committed a prohibited labor practice by refusing a union's demand to bargain, there is often this threshold question: whether the

- 214 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

collective bargaining agreement already covers what would otherwise be a mandatory subject of bargaining. See *Fraternal Order of Police v. City of York*, 309 Neb. 359, 960 N.W.2d 315 (2021). If a topic is covered by a collective bargaining agreement, then the parties have no further obligation to bargain over the issue. *Id.*

We adopted the contract coverage rule in *Douglas Cty. Health Ctr. Sec. Union, supra*. We found persuasive the reasoning of federal circuit courts, particularly the U.S. Court of Appeals for the D.C. Circuit, that had adopted the rule in the context of federal labor law. See *id.* We have subsequently looked to opinions from the D.C. Circuit for guidance in applying the contract coverage rule, see *City of York, supra*, and do so again in this case.

The rationale for the contract coverage rule is that when a union and an employer enter into a collective bargaining agreement that covers an issue, the parties have already bargained over and settled that issue. Therefore, they should not be forced back to the negotiating table to bargain over it again while the agreement is in effect. See, e.g., *Tramont Manufacturing, LLC v. N.L.R.B.*, 890 F.3d 1114, 1120 (D.C. Cir. 2018) (contract coverage rule "rests on the rationale that, once a union and an employer enter into a collective-bargaining agreement, the union *has exercised* its bargaining right") (emphasis in original) (internal quotation marks omitted); *N.L.R.B. v. U.S. Postal Service*, 8 F.3d 832, 836 (D.C. Cir. 1993) ("the duty to bargain . . . does not prevent parties from negotiating contract terms that make it unnecessary to bargain over subsequent changes in terms or conditions of employment"); *City of York*, 309 Neb. at 372, 960 N.W.2d at 325 ("[a] subject covered by a collective bargaining agreement has already been fully negotiated, and the public employer, by following the agreement's provisions, does not refuse . . . to negotiate in good faith with respect to mandatory topics of bargaining"). Put another way, the rule ensures that when an issue is covered by a collective bargaining agreement, "there is no continuous duty to bargain

- 215 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

[over that issue] during the term of [the] agreement." *U.S. Postal Service*, 8 F.3d at 836.

To determine whether the contract coverage rule applies, courts engage in "contract interpretation." *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 116, 817 N.W.2d 250, 256 (2012). See, also, *Fraternal Order of Police v. City of York*, 309 Neb. 359, 960 N.W.2d 315 (2021). "[A] subject may be covered by an agreement even if the agreement does not clearly and unmistakably address that particular subject." *Wilkes-Barre Hosp. Company, LLC v. N.L.R.B.*, 857 F.3d 364, 376 (D.C. Cir. 2017). In addition, an employer's unilateral decision may be covered by a collective bargaining agreement even if the agreement does not "specifically mention" or "specifically address" that decision. *Id.* at 377 (internal quotation marks omitted). See, also, *City of York, supra*. A subject is covered if it is merely "'within the compass of' the terms of the agreement." *Wilkes-Barre Hosp. Company, LLC*, 857 F.3d at 377 (quoting *U.S. Postal Service, supra*). See, also, *City of York, supra*. At the same time, "vague, all-inclusive statements that employers 'may do whatever they please'" do not establish that all issues are covered by a collective bargaining agreement. *Id.* at 373, 960 N.W.2d at 325.

In describing the contract coverage rule, the D.C. Circuit has said that "[i]n short, the courts attempt to interpret collective bargaining contracts so as to respect the agreements reached by the parties who made them." *U.S. Postal Service*, 8 F.3d at 836. It has also said that courts may not "abrogate a lawful agreement merely because one of the bargaining parties is unhappy with a term of the contract and would prefer to negotiate a better arrangement." *Id.*

A case from the U.S. Court of Appeals for the Seventh Circuit offers a concise illustration of how the contract coverage rule works. In *Columbia College Chicago v. N.L.R.B.*, 847 F.3d 547 (7th Cir. 2017), a union alleged that an employer, a private college, had violated federal labor law by unilaterally reducing the credit hours for several courses the college offered, rather than

- 216 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

bargaining with the union over the reduction. A provision of the parties' collective bargaining agreement, however, provided that the college had the right to "'modify . . . all aspects of educational policies and practices,'" including the "'modification [or] alteration . . . of any . . . course.'" *Id.* at 549. Because "[r]educing the number of credit hours for a course constitute[d] a modification or alteration of that course," the Seventh Circuit concluded that the contract coverage rule applied and the college was not obligated to bargain over the reduction in credit hours. *Id.* at 553.

(b) Contract Coverage Rule Applied

With the foregoing background in mind, we now address NAPE's arguments that the CIR erred when it determined that the contract coverage rule applied and, accordingly, that the State was not obligated to accede to NAPE's demands to bargain. For reasons we will explain, we find no merit to NAPE's arguments.

As set forth above, paragraph 3.8 of the collective bargaining agreement provides that the State has the right to "increase, reduce, change, modify and alter the composition and site of the work force." Although there are perhaps other provisions of the collective bargaining agreement that bolster the argument that the contract coverage rule applies, we find that the language of paragraph 3.8, standing on its own, covers NAPE's demand to bargain.

[3] In paragraph 3.8, the parties agreed that the State could "change" the "site" of "the work force." When interpreting contracts, the court must accord clear terms their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Ray Anderson, Inc. v. Buck's, Inc.*, 300 Neb. 434, 915 N.W.2d 36 (2018). We find that the meaning of each of these terms is clear. In this context, the word "site" would be understood to refer to location, while "the work force" would be understood to refer to all covered employees collectively. See, The New Oxford American Dictionary 1596 (2001)

- 217 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

(defining "site" as "a place where a particular event or activity is occurring or has occurred"); Black's Law Dictionary 1671 (12th ed. 2024) (defining "site" as "[a] place or location"). See, also, The New Oxford American Dictionary, *supra* at 1944 (defining "work force" as "the people engaged in or available for work, either in a country or area or in a particular company or industry"); Black's Law Dictionary, *supra* at 1930 (defining "work force" as "[c]ollectively, all the workers engaged in a particular activity or enterprise").

Considering all its terms, paragraph 3.8 gives the State the authority to change the location where covered employees are expected to perform their work. Just as the collective bargaining language in *Columbia College Chicago v. N.L.R.B.*, 847 F.3d 547 (7th Cir. 2017), authorized the employer to reduce the number of credit hours for a course, paragraph 3.8 gives the State authority to require covered employees who previously worked at a remote location to now work at an assigned office or field location. The executive order thus falls "within the compass" of paragraph 3.8. See *Fraternal Order of Police v. City of York*, 309 Neb. 359, 375, 960 N.W.2d 315, 326 (2021).

NAPE does not really dispute the reading of paragraph 3.8 we set forth above. Instead, NAPE takes the position that notwithstanding this reading of paragraph 3.8, the contract coverage rule still does not apply. NAPE offers several arguments in support of this position, some of which merit more analysis than others. We address each below, beginning with those that require relatively little discussion.

First, NAPE argues that the contract coverage rule does not apply because the collective bargaining agreement does not specifically mention remote work. But that argument does not even get off the ground. As we explained above, a subject need not be specifically mentioned or clearly and unmistakably addressed for the contract coverage rule to apply. All that is required is that the employer's decision fall "within the compass" of terms of the agreement. See *City of York*,

- 218 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

309 Neb. at 375, 960 N.W.2d at 326. And those terms can be broad. See, e.g., *Chicago Tribune Co. v. N.L.R.B.*, 974 F.2d 933, 937 (7th Cir. 1992) (a management rights clause "can be drawn so broadly as to leave no doubt that a particular regulation was intended to be within its scope"). Here, the collective bargaining agreement gave the State the right to make changes to where covered employees must work. As we have explained, this language encompassed the decision to generally prohibit remote work, even if remote work was not specifically mentioned.

Having failed in its argument that paragraph 3.8 is not sufficiently specific to trigger the contract coverage rule, NAPE tries an argument that it is too broad for the rule to apply. But this argument fares no better. Although we have recognized that "vague, all-inclusive statements that employers 'may do whatever they please' are insufficient to establish that all topics are thereby covered by a collective bargaining agreement," *City of York*, 309 Neb. at 373, 960 N.W.2d at 325, paragraph 3.8 does not even approach this standard. Rather than giving the State carte blanche in all areas, paragraph 3.8 gives the State discretion to make changes to "the composition and site of the work force."

In addition to its arguments that the collective bargaining agreement does not cover remote work at all, NAPE makes an alternative, more nuanced argument. Here, NAPE acknowledges that paragraph 3.8 of the collective bargaining agreement may have authorized the State to generally prohibit remote work. But, according to NAPE, even if that is so, the contract coverage rule would still not relieve the State of all obligations to bargain.

NAPE argues that for the contract coverage rule to apply, the collective bargaining agreement had to spell out the procedures the State would follow if it decided to change policies regarding remote work. More specifically, NAPE argues that even if paragraph 3.8 of the collective bargaining agreement permitted the State to generally prohibit remote work,

- 219 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

the State was still obligated to bargain over the exceptions to the remote work prohibition listed within the executive order. On this point, NAPE argues that because the collective bargaining agreement does not address those exceptions, the contract coverage rule does not relieve the State from the obligation to bargain over them. We mention one example to illustrate NAPE's contention: NAPE points to the exception in the executive order that permits agency heads to allow for a remote work arrangement if the agency does not have available office space. NAPE argues that because the collective bargaining agreement does not address what procedures the State will follow if an agency lacks necessary office space, the State was obligated to bargain with NAPE over the "assignment procedures, criteria and expenses if an office is at full capacity." Supplemental brief for appellant at 15. In sum, NAPE argues that even if the collective bargaining agreement permitted the State to adopt the remote work policy, it was still obligated to bargain with NAPE over how this policy would be implemented.

NAPE claims that these arguments are supported by Nebraska precedent. NAPE primarily relies on *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 817 N.W.2d 250 (2012), the case in which we first adopted the contract coverage rule. At issue in that case was whether an employer was obligated to bargain with a union after the employer decided to outsource some jobs previously performed by members of the union. We concluded that the union was not obligated to bargain over the issue because the contract coverage rule applied.

Even though we decided that the contract coverage rule applied in *Douglas Cty. Health Ctr. Sec. Union, supra*, NAPE claims that two aspects of our decision in that case support its argument. First, NAPE identifies language from that decision stating that to determine whether the contract coverage rule applies, we would examine whether the governing collective bargaining agreement "fully defines the parties' rights"

- 220 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

as to the outsourcing of union jobs. *Id.* at 117, 817 N.W.2d at 257 (internal quotation marks omitted). Second, NAPE points out that in our explanation of why the contract covered the outsourcing of union jobs, we said that a provision of the collective bargaining agreement "specifically note[d] the steps that [the employer] needs to follow" when outsourcing would result in the elimination of jobs performed by union members. *Id.* at 119, 817 N.W.2d at 258. NAPE argues that the collective bargaining agreement in this case does not "fully define" the parties' rights because the agreement does not address the various exceptions included in the executive order. Brief for appellant at 27. It also reads our decision in *Douglas Cty. Health Ctr. Sec. Union* to hold that the contract coverage rule applies only if the collective bargaining agreement spells out the procedures an employer must follow if it exercises rights granted by the agreement. NAPE argues the collective bargaining agreement in this case does not set forth any such procedures.

NAPE also relies on a decision of the Nebraska Court of Appeals, *Public Assn. of Govt. Empl. v. City of Lincoln*, 24 Neb. App. 703, 896 N.W.2d 630 (2017). In that case, the Court of Appeals rejected an argument that the contract coverage rule applied. The Court of Appeals appears to have read *Douglas Cty. Health Ctr. Sec. Union, supra*, to hold that the contract coverage rule can apply only if the collective bargaining agreement spells out the steps the employer will follow if it exercises discretion granted by the agreement. See *Public Assn. of Govt. Empl.*, 24 Neb. App. at 710, 896 N.W.2d at 636 ("the Supreme Court concluded that the issue of subcontracting of bargaining unit jobs was clearly covered by the applicable [collective bargaining agreement], *because* the [collective bargaining agreement] specifically noted the steps that the [employer] needed to follow") (emphasis supplied). Unsurprisingly, NAPE argues that *Public Assn. of Govt. Empl.* supports its position that the contract coverage rule does not apply in this case because the collective bargaining agreement

- 221 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

does not identify procedures the State is to follow if it makes a change to its remote work policies.

While more compelling than its other arguments, we are ultimately not persuaded by NAPE's argument that the State was obligated to bargain over issues related to the implementation of the executive order. To begin, NAPE's reliance on the "fully defines the parties' rights" language from *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 117, 817 N.W.2d 250, 257 (2012) (internal quotation marks omitted), fails to take account of other language in that same opinion. While we did say in that case we would determine whether the contract coverage rule applied by considering whether the relevant collective bargaining agreement "fully defines the parties' rights," *id.* (internal quotation marks omitted), we also favorably quoted language from a D.C. Circuit opinion stating that the contract coverage rule can apply even if the relevant collective bargaining agreement does not "specifically address . . . the full range of impact and implementation issues that might conceivably arise." *Id.* at 118, 817 N.W.2d at 257 (internal quotation marks omitted) (quoting *Dept. of Navy, Marine Corps Logistics Base v. FLRA*, 962 F.2d 48 (D.C. Cir. 1992)).

Considering our opinion in *Douglas Cty. Health Ctr. Sec. Union* as a whole, we understand its "fully defin[ing] the parties' rights" language not to make the application of the contract coverage rule depend on whether the collective bargaining agreement addresses every potential issue that might arise in the implementation of a policy that changes conditions of employment, but to focus the inquiry on whether the terms of the agreement authorize the employer to take the disputed action. 284 Neb. at 117, 817 N.W.2d at 257 (internal quotation marks omitted). This is consistent with our later statement in *Fraternal Order of Police v. City of York*, 309 Neb. 359, 374, 960 N.W.2d 315, 326 (2021), that we determine whether the contract coverage rule applies by considering whether the employer's action was "within the compass" of

- 222 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

the collective bargaining agreement. When the action of the employer is authorized by language within the agreement, the collective bargaining agreement "fully defines the parties' rights" as to that issue. *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. at 117, 817 N.W.2d at 257 (internal quotation marks omitted).

With this understanding of *Douglas Cty. Health Ctr. Sec. Union* in mind, NAPE's argument that the State was obligated to bargain over each of the exceptions to the general prohibition on remote work crumbles. The collective bargaining agreement did not define the parties' rights as to remote work any less because Governor Pillen chose to make some exceptions to the general rule prohibiting remote work arrangements. And yet, for us to agree with NAPE, we would have to reach that conclusion. What matters for purposes of the contract coverage rule is that the collective bargaining agreement authorized the State to order employees to work at an assigned office or field location, not whether it "specifically address[ed] . . . the full range of impact and implementation issues that [could have] conceivably arise[n]" from that directive. *Douglas Cty. Health Ctr. Sec. Union*, 284 Neb. at 118, 817 N.W.2d at 257 (internal quotation marks omitted) (quoting *Dept. of Navy, Marine Corps Logistics Base v. FLRA, supra*). Because the collective bargaining agreement authorized the general prohibition on remote work, it fully defines the parties' rights as to that issue, and the inclusion of exceptions within the executive order makes no difference to that conclusion.

As for NAPE's argument that the contract coverage rule did not apply because the collective bargaining agreement did not outline specific steps the State would take if it made a change to remote work policies, we are again unpersuaded. While our opinion in *Douglas Cty. Health Ctr. Sec. Union v. Douglas Cty.*, 284 Neb. 109, 119, 817 N.W.2d 250, 258, (2012), did observe that the collective bargaining agreement in that case listed "steps" the employer needed to follow if it decided to outsource union jobs, we did not say that a

- 223 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

collective bargaining agreement *must* list such steps for the contract coverage rule to apply. To the extent the Court of Appeals concluded otherwise in *Public Assn. of Govt. Empl. v. City of Lincoln*, 24 Neb. App. 703, 896 N.W.2d 630 (2017), that opinion is disapproved.

Not only did we not hold in *Douglas Cty. Health Ctr. Sec. Union* that the relevant collective bargaining agreement must list steps the employer will take if it makes a change to conditions of employment for the contract coverage rule to apply, we decline to adopt such a rule now. It would be inconsistent with the "compass" test to hold that the contract coverage rule can apply only if the collective bargaining agreement outlines the specific procedures an employer will follow if it makes some change to conditions of employment that the collective bargaining agreement permits. See *Fraternal Order of Police v. City of York*, 309 Neb. 359, 374, 960 N.W.2d 315, 326 (2021). As we have discussed, we have said that the contract coverage rule applies if the employer's action is "within the compass" of the collective bargaining agreement. *Id.* But the terms of a collective bargaining agreement could permit the employer to take a particular unilateral action without also listing the steps the employer will follow if it chooses to take that action.

In *Enloe Medical Center v. N.L.R.B.*, 433 F.3d 834 (D.C. Cir. 2005), we understand the D.C. Circuit to have rejected an understanding of the contract coverage rule similar to the one advocated by NAPE in this case. In *Enloe Medical Center*, there was no dispute that the governing collective bargaining agreement permitted a hospital to adopt a mandatory on-call policy for its nurse-employees. The union representing the nurses, however, contended that the hospital was still required to bargain with it over "the *effects* of that policy." *Id.* at 837 (emphasis in original).

The D.C. Circuit rejected that argument and found the contract coverage rule applied. The D.C. Circuit explained that whether the contract coverage rule applied to excuse the

- 224 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

hospital from bargaining over the effects of its decision was "just as much a matter of ordinary contract interpretation as is the initial determination of whether the agreement covers the matter altogether." *Id.* at 839. And, the D.C. Circuit added, "It would be rather unusual . . . to interpret a contract as granting an employer the unilateral right to make a particular decision but as reserving a union's right to bargain over the effects of that decision." *Id.* Because there was no language in the contract or bargaining history suggesting the parties intended to reserve such a right, the D.C. Circuit held that the contract coverage rule applied. See, also, *Columbia College Chicago v. N.L.R.B.*, 847 F.3d 547 (7th Cir. 2017) (adopting *Enloe Medical Center* analysis to determine whether contract coverage rule applied to excuse employer from bargaining over effects of decision).

Returning to this case, NAPE asks us to find that even if the collective bargaining agreement authorized the State to change its remote work policies, the State was still obligated to bargain over the procedures it would follow in implementing that decision because the agreement did not specifically discuss such procedures. We decline NAPE's invitation. We agree with the D.C. Circuit that in the absence of language in the collective bargaining agreement suggesting otherwise, it would be anomalous to interpret the agreement to grant the employer a unilateral right to make a particular decision but to reserve to the union the right to bargain over the procedures it will follow to implement that decision. It is more natural, in our view, to interpret an agreement that gives the employer the authority to make a particular decision to also confer the authority to the employer to choose the procedures it will follow in implementing that decision. In this case, that understanding is only reinforced by paragraph 3.12 of the collective bargaining agreement, which provided the State with the express right "to adopt, modify, change, enforce, or discontinue any existing rules, regulations, procedures or policies." We are not convinced by NAPE's argument that the State was obligated to

- 225 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

bargain over the procedures it would follow in implementing the remote work executive order.

For reasons we have set forth, we conclude the CIR did not err in finding that the contract coverage rule applied. We affirm the dismissal of the prohibited practices petition on this basis.

## 2. AWARD OF ATTORNEY FEES

This leaves only NAPE's argument that the CIR erred when it awarded the State attorney fees and costs. NAPE argues that an award of attorney fees was not authorized in this case by either Rule 42 of the CIR or § 25-824. As we will explain, we agree with NAPE on this point.

Starting with Rule 42 of the CIR, that rule addresses prohibited practices petitions like the one NAPE filed in this case. It provides:

> A. A complaint filed for prohibited practices shall be filed as a petition as otherwise governed by these rules. Petitions alleging prohibited practices shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, without repetition, and a demand for the relief to which the party supposes itself entitled. The petition shall also specify the sections and subsections of the Nebraska statutes which have allegedly been violated.
>
> B. Relief under a prohibited practice petition may include, but is not limited to:
>
> 1. A request for a cease and desist order;
>
> 2. A request for attorney's fees; (a) Attorney's fees may be awarded as an appropriate remedy when the [CIR] finds a pattern of repetitive, egregious, or willful prohibited conduct by the opposing party. (b) Attorney's fees are a remedy used to reimburse the injured party's costs caused by the opposing party's conduct. An award of fees shall be granted in an amount sufficient to make whole the injured party, and shall not be construed as a sanction against the opposing party;

- 226 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

3. A request to reimburse the fees withheld;

4. Reinstatement;

5. Payment of lost back wages; and,

6. Such other relief as may be deemed appropriate by the [CIR].

The CIR concluded that it could order NAPE to pay attorney fees under Rule 42 because it found that NAPE had engaged in "prohibited conduct" under that rule by pursuing its petition in bad faith.

The State does not even attempt to defend the CIR's conclusion that Rule 42 authorized the award of attorney fees here, and we agree with NAPE that it did not. Rule 42 permits the CIR to award attorney fees in a prohibited practices case as a remedy for "repetitive, egregious, or willful *prohibited conduct by the opposing party*" (emphasis supplied). The reference to "prohibited conduct by the opposing party" in this context refers to conduct of the party opposing the petition that is prohibited by labor law, not the litigation conduct of the petitioner. Rule 42 did not authorize the award of attorney fees here.

[4,5] The State argues that attorney fees could be awarded under § 25-824(2) because NAPE's prohibited practices petition was frivolous. But a party seeking to establish that its opponent advanced a frivolous claim faces a steep climb. We have said that a frivolous action is one in which a litigant asserts a legal position wholly without merit; that is, the position is without rational argument based on law and evidence to support the litigant's position. *City of Omaha v. Professional Firefighters Assn.*, 309 Neb. 918, 963 N.W.2d 1 (2021). We have even gone so far as to say that the term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Id.* Not only is the standard high, we have added that any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. *Id.*

- 227 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

We have concluded that NAPE's petition in this matter lacked merit, but we cannot agree that it was so lacking in legal support as to be frivolous. NAPE could plausibly point to language in *Douglas Cty. Health Ctr. Sec. Union* and the Court of Appeals' decision in *Public Assn. of Govt. Empl.* to support its argument that the contract coverage rule did not apply in the absence of language in the collective bargaining agreement setting forth the steps the State would follow if it changed its remote work policies. While we were not ultimately persuaded by NAPE's arguments that the contract coverage rule did not apply, those arguments were not frivolous.

In addition to concluding that the State was not obligated to bargain with NAPE because the contract coverage rule applied, the CIR alternatively determined that NAPE waived any right to bargain over the remote work executive order. Because we have concluded that the contract coverage rule applies, we need not determine whether the CIR was correct to conclude that NAPE also waived the right to bargain. For purposes of the CIR's award of attorney fees, however, we consider whether NAPE's claim that it had not waived the right to bargain was frivolous. We conclude it was not.

Although it is possible for employees or their representatives to waive the right to bargain on mandatory subjects of bargaining, the burden of proving waiver is on the employer to clearly and unmistakably prove that a waiver took place. See *Service Empl. Internat. v. Douglas Cty. Sch. Dist.*, 286 Neb. 755, 839 N.W.2d 290 (2013). The D.C. Circuit has said that, in general, a waiver of the right to bargain "must be demonstrated by an express statement in the contract to that effect." *Gannett Rochester Newspapers v. N.L.R.B.*, 988 F.2d 198, 203 (D.C. Cir. 1993) (internal quotation marks omitted). The D.C. Circuit and this court have both recognized that in some circumstances, a clear and unmistakable waiver could be implied by the parties' course of conduct. See, *id.*; *Service Empl. Internat., supra*. But the D.C. Circuit has said for an employer to show that a union clearly and unmistakably waived its rights

- 228 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

through conduct, it must establish that the parties "consciously explored or fully discussed the matter on which the union has consciously yielded its rights." *Wilkes-Barre Hosp. Company, LLC v. N.L.R.B.*, 857 F.3d 364, 378 (D.C. Cir. 2017) (internal quotation marks omitted).

Given the clarity with which an employer must establish a waiver and the difficulty in establishing that a claim is frivolous, we cannot say that it was frivolous for NAPE to contend that it had not waived the right to bargain over remote work. Other than evidence that NAPE made a specific remote work proposal and that the State refused to consider it, there was not much evidence adduced at the CIR hearing as to the parties' discussions regarding remote work. At the very least, NAPE could make a nonridiculous argument that the State had not clearly and unmistakably shown the parties had fully discussed the matter of remote work and NAPE consciously yielded all rights to bargain over that issue.

Because we find that neither Rule 42 of the CIR nor § 25-824(2) authorized an award of attorney fees in this case, we find the CIR erred in its attorney fee award.

## V. CONCLUSION

NAPE agreed to a collective bargaining agreement that permitted the State to "change" the "site" of the "work force." By agreeing to this language, NAPE agreed that the State could require covered employees to work at an assigned office or field location. Having agreed to give the State that authority, NAPE could not, through a prohibited practices petition, force the State to bargain over that issue even if NAPE regretted agreeing to the language above after Governor Pillen's executive order was adopted. The CIR did not err in concluding that the contract coverage rule applied and that therefore, the State had no obligation to accede to NAPE's bargaining demand. We affirm the CIR's dismissal of NAPE's petition on that basis.

- 229 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
NEBRASKA ASSN. OF PUB. EMPLOYEES v. STATE
Cite as 321 Neb. 208

But while NAPE's prohibited practices petition was not meritorious, the CIR erred by requiring NAPE to pay the State's attorney fees. Under existing precedent, NAPE could make nonfrivolous arguments that the State had an obligation to bargain over the Governor's executive order. Accordingly, we reverse the CIR's award of attorney fees.

Affirmed in part, and in part reversed.